640 F.2d 96
 24 Fair Empl.Prac.Cas. 1019,
25 Fair Empl.Prac.Cas. 1761,
34 Fair Empl.Prac.Cas. 1008,
24 Wage & Hour Cas. (BN 1149,
24 Wage & Hour Cas. (BN 1431,
24 Empl. Prac. Dec. P 31,426,
27 Empl. Prac. Dec. P 32,190, 90 Lab.Cas. P 33,964
 Betty Lou STRECKER, Appellant,
v.
GRAND FORKS COUNTY SOCIAL SERVICE BOARD; Clarence Ohlsen in
his official capacity as Director, Mrs. W. R. Hovell; Robert
Kinney; Lloyd Leake; Donald B. Matteson; Charles N. Murphy;
Earl Ronan; Henry Stromsodt and Mrs. Floyd Tucker, in their
official capacity as Board members of the Grand Forks Social
Service Board; and John or Jane Doe, real and true name
unknown, who may be a Board member in his or her official
capacity, Appellees.
Betty Lou STRECKER, Appellee,
v.
GRAND FORKS COUNTY SOCIAL SERVICE BOARD; Clarence Ohlsen in
his official capacity as Director, Mrs. W. R. Hovell; Robert
Kinney; Lloyd Leake; Donald B. Matteson; Charles N. Murphy;
Earl Ronan; Henry Stromsodt and Mrs. Floyd Tucker, in their
official capacity as Board members of the Grand Forks Social
Service Board; and John or Jane Doe, real and true name
unknown, who may be a Board member in his or her official
capacity, Appellants.
 Nos. 80-1033 and 80-1063.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 12, 1980.
Decided Dec. 31, 1980.
Panel majority opinion adopted on rehearing, March 10, 1981.
 
 Robert A. Feder, Fargo, N. D., for appellant.
 Damon E. Anderson, Grand Forks, N. D., for appellees.
 Before LAY, Chief Judge, HEANEY, Circuit Judge, and PORTER, District Judge.*
 LAY, Chief Judge.
 
 
 1
 This suit, brought by Betty Strecker, is based on allegations of sex discrimination and denial of equal pay against her employer, the Grand Forks County Social Service Board, its director in his official capacity and its individual members in their official capacity. The action was commenced under title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Fair Labor Standards Act, as amended, 29 U.S.C. § 206(d), commonly known as the Equal Pay Act of 1963, and 42 U.S.C. § 1983. Mrs. Strecker began working for the Board in 1969 and since 1970 has held various positions relating to the administration of economic welfare to recipients in North Dakota. In 1977 she resigned her position to move to Bismarck, North Dakota with her husband where she assumed an administrative position with the state social services agency. Her basic claim relates to the fact that her successor, a male, David Braaten, was paid substantially more money than she received when employed by the Board. The district court, The Honorable Paul Benson, found that Mrs. Strecker had performed substantially equal work under similar working conditions but received less pay than her male successor. Nonetheless, the district court denied relief holding the Board had proven the disparity in pay was based on factors other than sex. She has appealed that ruling. We affirm the judgment of the district court.
 
 
 2
 Standard of Review.
 
 
 3
 Mrs. Strecker fails to demonstrate that any of the factual findings of the district court are clearly erroneous. She challenges the ultimate finding by the district court that she was not unlawfully discriminated against. Although there may be some confusion from our prior opinions, the ultimate conclusion of discrimination vel non is not governed by the clearly erroneous rule. See Shultz v. American Can Co. Dixie Products, 424 F.2d 356, 360 n.6 (8th Cir. 1970). As the Fifth Circuit has observed:
 
 
 4
 Although discrimination vel non is essentially a question of fact it is, at the same time, the ultimate issue for resolution in this case, being expressly proscribed by 42 U.S.C.A. § 2000e-2(a). As such, a finding of discrimination or nondiscrimination is a finding of ultimate fact.... In reviewing the district court's findings, therefore, we will proceed to make an independent determination of appellant's allegations of discrimination, though bound by findings of subsidiary fact which are themselves not clearly erroneous. Also, ... we must determine whether there are requisite subsidiary facts to undergird the ultimate facts.
 
 
 5
 Causey v. Ford Motor Co., 516 F.2d 416, 421 (5th Cir. 1975) (citations omitted), quoted in Wade v. Mississippi Cooperative Extension Service, 528 F.2d 508, 516 (5th Cir. 1976).
 
 
 6
 Applying this standard of review, we proceed to the merits of Mrs. Strecker's claim.
 
 
 7
 Equal Pay Act Violation.
 
 
 8
 Title VII and the Equal Pay Act must be construed in harmony. DiSalvo v. Chamber of Commerce of Greater Kansas City, 568 F.2d 593, 596 (8th Cir. 1978). Although plaintiff has brought suit under the Equal Pay Act as well as title VII, our basic analysis is essentially the same under either theory.[1] To show a prima facie case, Mrs. Strecker must prove she performed substantially equal work as her successor but was paid less for it.
 
 
 9
 1. Prima Facie Case.
 
 
 10
 Contrary to defendants' argument on appeal, we agree that plaintiff established a prima facie case. Plaintiff demonstrated that her wage rate, even during the last two years with the Board when she had assumed greater administrative responsibilities, was substantially less than that paid to her male successor. The record demonstrates she was performing work substantially equal to that performed by Braaten when he first assumed his duties. Under the statute, equal work means "jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d). In determining whether work is equal, the court must look to the nature of the duties actually required and performed, not the official job description or title. Katz v. School District of Clayton, Missouri, 557 F.2d 153, 156 (8th Cir. 1977).
 
 
 11
 Although defendants attempt to urge that Braaten was hired as assistant director, the district court recognized the equality of work is not determined by duties or responsibilities which were to be assumed in the future. See Peltier v. City of Fargo, 533 F.2d 374, 377 (8th Cir. 1976). The evidence showed Mr. Braaten performed work substantially identical to Mrs. Strecker for nearly the first year he was employed by the Board. The district court correctly concluded that they performed equal work.
 
 
 12
 Once Mrs. Strecker has proven a prima facie case, defendants have the burden of proving that the disparity in pay was based on some factor other than sex. We conclude that they have done so. An analysis of the record unequivocally sustains this conclusion.
 
 
 13
 2. Statutory Defense.
 
 
 14
 Throughout her tenure with the agency, Mrs. Strecker's classification and thus her salary were determined by the Central Personnel Division, Social Service Board of North Dakota (Central Personnel). The Grand Forks County Board could only recommend changes in classifications Central Personnel had the final authority to determine classifications.
 
 
 15
 The structure of the classification system used by Central Personnel to evaluate positions and persons, and thus set salaries, is undisputed. Salaries are set by a dual classification system which classifies both positions and persons. Positions are classified by the responsibilities and duties they require. The qualifications or other characteristics of the person filling a position are irrelevant to the position's classification. Persons are classified according to their experience in areas related to their job responsibilities and their education. Compensation systems that determine salaries on the basis of job duties and responsibilities, educational attainments and experience, which are related to the responsibilities and duties that employees must perform in their jobs, are clearly permissible under the Equal Pay Act. See Horner v. Mary Institute, 613 F.2d 706, 714 (8th Cir. 1980); EEOC v. Aetna Insurance Co., 616 F.2d 719, 726 & n.10 (4th Cir. 1980); EEOC v. New York Times Broadcasting Service, Inc., 542 F.2d 356, 359-60 (6th Cir. 1976); Herman v. Roosevelt Federal Savings & Loan Association, 432 F.Supp. 843, 851 (E.D.Mo.1977), aff'd, 569 F.2d 1033 (8th Cir. 1978) (the trial court said "It is clear that an employer may pay a higher starting salary to one who has education or experience relevant to the job to be performed.... This Court does not wish to dictate to defendant what college courses it should consider as 'job related' and what monetary value it should give them."); Brennan v. Federal National Mortgage Association, 12 FEP Cases 490 (C.D.Calif.1975). Salary differentials that result from applying these objective criteria do not violate that act.[2]
 
 
 16
 Under Central Personnel's system, each classification is assigned a salary range. The job classification determines the minimum[3] and maximum salary which any person filling that position may receive. The personal classification determines the minimum and maximum salary which a person so classified may receive. Typically, a person's classification matches the position classification so that the minimum and maximum salaries coincide. However, the system allows mismatching of personal and position classifications. If a job filled by an incumbent person is reevaluated to a higher classification, the system allows that person to remain in the job. This is called "underfilling" the position. In an underfilling situation, the person's salary is determined by his or her personal classification not the classification of the position. As the person gains the requisite experience or education, the person's classification and salary are raised to equal the classification of his or her job.
 
 
 17
 On July 1, 1975, after some difficulty,[4] Mrs. Strecker's position was reclassified as an Administrative Officer I. Central Personnel also found that at that time Mrs. Strecker, personally, had the experience to be classified as an Administrative Officer I, thus, her personal classification matched her job's classification.
 
 
 18
 Administrative Officer I classification required four years of college or four years of supervisory experience. Administrative Officer II classification required four years of college or equivalent experience and two years of professional experience within a public or private organization; Administrative Officer III required four years of college or equivalent and four years of professional experience.
 
 
 19
 On March 18, 1977, Strecker and Ohlsen submitted a request to reclassify Strecker's position to an Administrative Officer III. This request was the result of prior discussions between Ohlsen and Ronald Leingang, State Social Service Board's Personnel Officer.[5] As a result of this reclassification request, Central Personnel reevaluated Strecker's position to Administrative Officer III effective May 1, 1977.[6] From May 1 to July 31, Strecker was underfilling her position. According to the undisputed evidence she was classified only as an Administrative Officer I before July 1, 1977, because she did not have the requisite experience even though her job was classified as an Administrative Officer III. Under the system, her salary remained that of an Administrative Officer I. Effective April 1, 1977, the Board increased her salary to the maximum within the Administrative Officer I range. The Board voted Strecker this retroactive increase on April 14, 1977, after it had received informal notice that her position was to be upgraded to Administrative Officer III, and prior to extending its offer to Braaten. At that time Central Personnel claimed Strecker was not qualified even for Administrative Officer II. On April 18th the Board urged Central Personnel to reconsider Mrs. Strecker's appeal.[7]
 
 
 20
 Mrs. Strecker offered no evidence that in her case the objective, neutral criteria of the Central Personnel classification system were not applied. Rather she argues that she was effectively prevented by Mr. Ohlsen from being evaluated under the non-biased classification system. She argues that Ohlsen prevented her from submitting her job description to Central Personnel for reevaluation and he did so because he was biased against women.
 
 
 21
 Although some evidence exists that occasionally Ohlsen demonstrated a sex-based bias, no evidence shows that this bias precluded Strecker from having her job reclassified or that he was responsible for her staying at a lower salary. Ohlsen testified that although he had not initiated any written job reclassification requests for Strecker since 1975, he had, in 1975 and 1976, made oral inquiries and received oral assurances that plaintiff's position did not warrant a higher classification. Defendants also introduced evidence that Ohlsen had supported reclassification requests in 1973 and 1975. The latter occurred when he supported plaintiff's appeal of the classification of her job as Eligibility Technician III. The appeal was successful in raising the classification to Administrative Officer I.
 
 
 22
 Even if we assume that Ohlsen prevented Mrs. Strecker from seeking reclassification of her job and did so because she is a woman, and further assuming that her position would have been reclassified as Administrative Officer III before May 1, 1977, the evidence is uncontradicted that she would not have received a higher salary because she did not have the personal qualifications to receive a salary at a level higher than Administrative Officer I prior to July 1, 1977. Under the system she could have underfilled this position but her salary would have been determined by her personal classification, Administrative Officer I. In this appeal, plaintiff does not dispute the fact that she did not meet the education or experience requirements of an Administrative Officer III at any time during her employ with the agency or the requirements of an Administrative Officer II prior to July 1, 1977. Because plaintiff could not personally be classified above Administrative Officer I, any reclassification of her position would not have affected her salary.
 
 
 23
 The district court found that before 1977 plaintiff received the same percentage increase in salary as did all other employees of the agency and in 1977 her salary dramatically increased to the maximum allowed by her classification. Additionally, the court found that prior to the time she announced her intention to leave, the position of plaintiff's salary within her classification was commensurate with the salary of the other two supervisors within their classifications. The court, in effect, held that the position of her salary within her classification was based upon factors other than her sex. The court was also persuaded by the fact that when the Board found out Mrs. Strecker was going to resign, they increased her salary to the maximum in her grade and attempted to have her classification upgraded so that she would be in a better bargaining position when she sought a new job in Bismarck.
 
 
 24
 The evidence further shows that every offer Ohlsen gave to prospects to replace Strecker was in the range allowed by the highest personal classification the prospect could attain with his or her education and experience. This is true for both male as well as female prospects.
 
 
 25
 We find the actions of Ohlsen and the Board were consistent in treating the agency's supervisors equally within the confines of Central Personnel's classification system. The evidence may well support the conclusion that the classification system underpaid capable people, as Mrs. Strecker was shown to be, however, there is no showing that the system was designed to, or in fact resulted in underpaying persons because of their sex. In any event, the bottom line is that Ohlsen and the Board could not advance Strecker without Central Personnel either altering its classification requirements or reevaluating Strecker's personal qualifications. As the April 18th letter of the Board to the Central Personnel Division demonstrates, the Board supported Strecker in efforts to have her advanced. On the record it is difficult to understand what more Ohlsen or the Board could do to help Strecker. It is obvious that Central Personnel controlled her advancement, not Ohlsen or the Board.
 
 
 26
 In view of our holding affirming the district court, it is not necessary to pass on the issues raised by defendants on the cross appeal, No. 80-1063.[8] Judgment affirmed.[9]
 
 
 27
 HEANEY, Circuit Judge, dissenting.
 
 
 28
 I agree that Betty Lou Strecker established a prima facie case of sex discrimination by proving that the work she performed was substantially equal to the work performed by her male successor and that she was paid $7,532 less per year.[1] Once she did so, the burden shifted to the defendants to prove that the disparity in pay was based on some factor other than sex. In my view, the defendants have not sustained that burden and the district court should be reversed.
 
 
 29
 The majority concludes, in substance, that the defendants sustained their burden by proving that the pay differential was justified by the state's personnel classification system. It is apparent from the record, however, that the defendants did nothing more than establish the existence of that system. If the defendants' conduct is to be shielded by the affirmative defense provided by the Equal Pay Act, it was necessary for them to prove more. First, they had to establish that the classification system's requirements were reasonably related to the jobs to be performed. Second, they had to show that Strecker did not have the qualifications necessary to justify classifying her at a higher grade. Third, because the defendants took the position that the classification system prevented them from raising Strecker's salary, they had to prove that she was being paid the highest salary that her classification would permit. They failed on all three counts.
 
 
 30
 * One cannot argue with the principle that a governmental unit can, without violating the Equal Pay Act or Title VII of the Civil Rights Act of 1964, adopt and implement a classification system that classifies all jobs in that unit on the basis of job content. Nor can one argue with the principle that a governmental unit can specify the education and experience that an employee must have, so long as the requirements are reasonably related to the job to be filled and are not used as a pretext to avoid paying women equal pay for substantially equal work. I think it is clear, however, that once a prima facie case of discrimination is established, the employer bears the burden of proving that the education and experience requirements for the classification in question are reasonably related to the job duties to be performed.[2] Unless the employer has this burden, the prima facie case concept is so weakened as to be useless. The defendants failed to carry that burden here. They presented no witnesses, expert or otherwise, to testify that it was reasonable to equate a year of college to a year's administrative supervisory experience or to require six years of administrative supervisory experience to be classified and paid as Administrative Officer II, or eight years of similar experience to be classified and paid as an Administrative Officer III.[3] Nor can we draw an inference that the stated experience was reasonably required in the face of undisputed evidence that Strecker very competently served as supervisor of Economic Assistance for over five years, even though she had only forty-five months of administrative supervisory experience when she first assumed the position.[4]
 
 II
 
 31
 Even if we assume that the classification system is a valid one, the defendants did not meet their burden of proving that Strecker lacked the personal qualifications necessary to be classified as and paid the salary of an Administrative Officer I as of May 1, 1972, and of an Administrative Officer II as of May 1, 1974.[5] On the latter date, she had six years of administrative supervisory experience: twenty-eight months as a supervisor at the First Federal Savings and Loan Association,[6] seventeen months as director of the Food Stamp Program for the County,[7] and twenty-five months as supervisor of Economic Assistance for the County.[8] Moreover, she had the eight years of required experience to be paid as an Administrative Officer III on July 1, 1976, as she then had two additional years of experience as supervisor of Economic Assistance.
 
 
 32
 There is some testimony that the administrative supervisory experience that she acquired at First Federal and as director of the Food Stamp Program was not of the quality necessary to be considered the equivalent of an equal number of years of college. But the testimony was vague and inconclusive and failed to establish just what experience does qualify as "administrative supervisory" or "professional" work experience.[9] Without evidence of clearly articulated standards, or of a pattern of evaluating personnel in a consistent nondiscriminatory manner, I simply cannot agree that the defendants have established that the state's classification system was a factor other than sex that justified the pay differential.[10]
 
 
 33
 Implicit in the majority opinion is the premise that a presumption of regularity should extend to the statewide classification system. I cannot accept this premise; to accept it would be to deny Strecker the benefit of the prima facie case that even the majority concedes she has established here. Nor can we infer that the state classification system is operated on a nondiscriminatory basis. The record indicates that the State Personnel Office reclassified positions or individuals on the basis of requests from the County; the only exception being those occasions when the State Personnel Department reclassified all positions within a governmental unit.[11] The County made no written requests to reclassify Strecker from April, 1972, until she gave notice of her intent to resign in early 1977.[12] Clarence Ohlsen, the director of the County Social Service Board and its appointing authority, consistently and intentionally discriminated against women on the basis of sex, and he was, for all intents and purposes, the ultimate authority in personnel matters at the County level.[13]
 
 
 34
 Ohlsen's discriminatory conduct is well illustrated by his dealings with Strecker. When she became the supervisor of the County's Economic Assistance Programs on April 1, 1972, Strecker indicated to Ohlsen that the $45 per month increase she was to receive with this promotion was inadequate compensation for her new responsibilities. Ohlsen responded that she should not receive more because she did not have a college degree and because her husband made a good living so she should not worry about additional income. This scenario was repeated in November of 1975 when Strecker again assumed significant additional responsibilities establishing and supervising the Child Support Enforcement Program (IV-D). She received no raise in pay and Ohlsen told her not to file a new job description with the State accurately reflecting her increased responsibility. Ohlsen indicated that the County's budget was in poor shape and again reminded her that her husband made a good living. He assured her that her salary would be reviewed in July, 1976. At that time, however, she received only the standard seven and one-half percent salary increase given to all the agency's employees. In November of 1976, Strecker again approached Ohlsen regarding her salary and classification. She had been encouraged by a State personnel officer to rewrite her job description to include her IV-D duties. Ohlsen told her that she was not to fill out a new job description, again emphasizing that she should not always be worrying about more money because her husband had sufficient income. Finally, all the male applicants for Strecker's job were told that if they stayed with the agency for four or five years, and if their services were satisfactory, they could expect to be named Ohlsen's successor as director of the agency. Throughout her tenure as supervisor of Economic Assistance, Strecker was never given such assurances, nor were the female applicants for her position told this, despite the fact that some of them had college degrees.
 
 
 35
 Ohlsen's discriminatory attitudes were reflected in his conduct toward other women at the agency as well. Susan Senger, an account technician with the County, testified that Ohlsen had told her that she should not worry about her salary because her husband had a good job. When Senger suggested during salary negotiations that the County should pay her health insurance benefits, Ohlsen's response was that he had mostly female employees under him and that their husbands carried their health insurance. Senger also testified that Ohlsen's discriminatory attitude was apparent from the beginning: his first concern in her employment interview was whether she was married and whether she was planning on having children.
 
 
 36
 The testimony of other female agency employees reinforced the impression that Ohlsen had sexist attitudes and that these attitudes influenced his personnel practices. Pam Fordyce testified that she was present when Ohlsen told one of the female supervisors that he would not want to pay her any more money than her husband made. Susan Grega, formerly a Food Stamp supervisor for the County, testified that Ohlsen had said that she was up for a raise but that he "was having problems justifying that kind of money to the Board because she is a woman."
 
 
 37
 The strong evidence of Ohlsen's discriminatory attitudes and the testimony that Ohlsen's support is essential to the success of employee reclassification requests, makes it difficult, if not impossible, to maintain that the statewide classification system ensured nondiscriminatory personnel decisions at the County level.
 
 III
 
 38
 Even if the defendants had carried their burden of proving that the classification system was a valid one and that Strecker did not have sufficient supervisory experience to justify being placed in a higher classification, they failed to prove that Strecker could not have been paid a higher salary under the classification system. In fact, all evidence in the record is to the contrary. Prior to July 1, 1975, Strecker was consistently paid below the mid-range of the salary for her classification. On that date, she was classified as an Administrative Officer I and was paid $850 per month when the maximum rate for that classification was $1,029 per month. From July 1, 1976, to April 1, 1977, she was paid $914 per month when the maximum rate was $1,080. It was not until after she gave notice of her intent to resign that she was paid the maximum for her classification. In the face of these facts, the majority should not have accepted the defendants' argument that they could pay Strecker no more than they did because of the classification system.
 
 
 39
 The district court found an alternate justification for the defendants' practice of paying Strecker less than they could. The court stated:
 
 
 40
 The agency employees were predominately female. The top three employees under Director Ohlsen (Clara Lyche, Betty Hanson, and plaintiff) were all female. Except for the brief period when Strecker stayed on and trained (her successor) to take her job, there were no male employees within the establishment performing work which required equal skill, effort and responsibility to that being performed by plaintiff. It is clear she was given equal treatment with other employees.
 
 
 41
 The record shows that the Board did not discriminate against plaintiff in rate of pay within the salary ranges for her classification. Until 1977, she received the same percentage increase in salary as all other employees of the Agency. In 1977, her salary increased dramatically, to the maximum allowable for her classification.
 
 
 42
 The essence of the district court's decision is that, because Strecker was treated on the same basis as other women employed in the agency, she was not discriminated against. This argument is without merit. If it proves anything, it proves that women other than the plaintiff, particularly Lyche and Hanson, were also discriminated against. The undisputed evidence is that Ohlsen, the only male supervisor, was paid at the maximum rate permitted for his classification. The salaries of the two female supervisors, Lyche and Hanson, were very substantially raised to approximate the salary being paid Strecker's successor only after they complained that they were being discriminated against because of their sex.
 
 
 43
 There is one matter that requires further comment. The majority opinion suggests that Strecker cannot recover because the County did not have final authority to reclassify her and pay her the salary of the higher classification. It also suggests that Strecker should have joined the State as a party defendant in the action. I cannot agree with either suggestion. The facts are, as we have pointed out, that Ohlsen made no significant effort to have Strecker reclassified until after she announced her resignation and that he had little, if any, trouble getting the position reclassified once he made the request. In fact, Ronald Leingang testified that if Strecker was doing the same work in November of 1975, that she was when the request was submitted in 1977, "then she should have been compensated at the Administrative Officer III level." Moreover, he testified that Thomas Longmire of the State Personnel Office questioned the motivation for reclassifying the position when Strecker was about to leave it, and asked Ohlsen, "Why didn't you pay more for this job when the incumbent had it, when Betty had it."
 
 CONCLUSION
 
 44
 This case illustrates better than most the difficulty that women have in establishing a right to recover under the Equal Pay Act or Title VII of the Civil Rights Act of 1964. Strecker is obviously a highly competent, dedicated person who has by hard work raised herself to the upper levels of her profession, and she has done so without the benefit of a college education. At every step of the way, she has worked hard for equal compensation, only to be turned down again and again because the defendants clung to the traditional view that women simply do not need to be paid as much as men, particularly if their husbands are working.[14]
 
 
 45
 Now, when she comes to court, she is met with one legal argument after another none of which, in my view, had any real merit. One simply cannot escape the fact that Ohlsen and the County Board discriminated against Strecker on the basis of her sex. Her successor was paid substantially more than she was paid, and it was within the power of the defendants not only to pay her more than they did throughout the years but also to have made sure that she was given credit for all her prior supervisory and administrative experience.
 
 
 46
 We have no alternative but to remand to the district court with directions to it to determine the back pay to which Strecker is entitled. Unless the defendants prove that the classification system is a nondiscriminatory one and that Strecker was given full credit for her prior administrative and supervisory experience pursuant to that system, she is entitled to receive the difference between what she was paid and the sum paid to her successor for the period permitted by law. The latter sum is to be reduced by across-the-board pay increases granted by the County during the relevant period. If the defendants sustain their burden of proving that the system is nondiscriminatory and that Strecker was given proper credit for her prior experience, then her recovery should be limited to the difference between the salary she was paid during the statutorily allowed period and the maximum salary she could have been paid as an Administrative Officer I during that time.
 
 
 47
 Strecker is also entitled to an award of attorney's fees for services rendered in the district court and this Court. The district court is to determine the fees in that court on the basis of Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). Firefighters Institute for Racial Equality v. City of St. Louis, 549 F.2d 506 (8th Cir. 1977). We should require an affidavit to be submitted as to the appropriate fee in this Court pursuant to the same standard.
 
 
 48
 Before LAY, Chief Judge, HEANEY, ROSS, STEPHENSON, HENLEY, McMILLIAN and ARNOLD, Circuit Judges, sitting En Banc.*
 
 
 49
 PER CURIAM.
 
 
 50
 The majority opinion of the panel is adopted by the court en banc.
 
 
 51
 McMILLIAN, Circuit Judge, joins HEANEY, Circuit Judge, in his dissent.
 
 
 52
 IT IS SO ORDERED.
 
 
 
 *
 Donald J. Porter, United States District Judge, District of South Dakota, sitting by designation
 
 
 [1]
 There appears to be some difference in both substantive and procedural approach. Substantively, title VII requires a showing of discriminatory intent. The Equal Pay Act creates a type of strict liability; no intent to discriminate need be shown. Procedurally, once a plaintiff has shown a prima facie case of sex discrimination under title VII the burden of going forward with the evidence to articulate a nondiscriminatory reason shifts to the employer. Plaintiff still retains the ultimate burden of proof to show discriminatory intent and that the justification by the defendant was pretextual. See Furnco Const. Corp. v. Waters, 438 U.S. 567, 577-78, 98 S.Ct. 2943, 2949-50, 57 L.Ed.2d 957 (1978); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973)
 Under the Equal Pay Act, once a prima facie case has been established, 29 U.S.C. § 206(d) provides defendants four affirmative defenses. Defendants have the burden of proving the wage disparity is the result of:
 (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.
 See Corning Glass Works v. Brennan, 417 U.S. 188, 196-97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974); Shultz v. American Can Co. Dixie Products, 424 F.2d 356, 362 n.10 (8th Cir. 1970). Title VII incorporates the Equal Pay Act defenses, 42 U.S.C. § 2000e-2(h), therefore, defendants who prove one of these defenses cannot be held liable under either the Equal Pay Act or title VII. See Gunther v. County of Washington, 602 F.2d 882, 891 (9th Cir. 1979); Molthan v. Temple Univ., 442 F.Supp. 448, 454 (E.D.Pa.1977).
 
 
 [2]
 Arguably, the educational and experience requirements could be a pretext for sex discrimination, however, plaintiff introduced no evidence that this was Central Personnel's intent when it established these criteria
 
 
 [3]
 If the position is "underfilled" the minimum does not apply
 
 
 [4]
 In 1975 reclassification came about because Central Personnel was at that time converting to the current system of classifications. Originally, Strecker's position was classified as Eligibility Technician III. After appeal by Strecker with Ohlsen's support, the position was reclassified to Administrative Officer I. Although Strecker's testimony suggests she could not apply to Central Personnel for reclassification on her own, the evidence suggests to the contrary. Strecker's petition for her 1975 reclassification was made on her own; Leingang, the State Personnel Director, indicated that an employee could petition on his or her own but that he would then notify the Board's director
 
 
 [5]
 The evidence is not clear whether the decision to make this request occurred before or after plaintiff gave Ohlsen notice of her resignation
 
 
 [6]
 Mr. Longmire of Central Personnel indicated in an exhibit that the reclassification request supported reclassification to Administrative Officer III but only weakly. He also wrote that subsequent information he received indicating that the position would also serve as assistant director made the classification stronger
 
 
 [7]
 A letter, written by Frank Bowles, chairman of the Grand Forks County Social Service Board, to Richard Espeland, Director of the Central Personnel Division, strongly indicates that the Board fully supported Mrs. Strecker's qualifications for the salary of an Administrative Officer III. After extolling Mrs. Strecker's personal virtues and her professional competency the letter reads in part:
 Now, it is my understanding that to be an Administrative Officer III, you must have a certain number of years of experience and a college degree, and that if you do not have the college degree, you substitute a year for a year's experience. It is our contention here that this young lady in this agency has at least seven years experience as an administrator, and it is our contention further that the experience she had at First Federal Savings & Loan should be qualified. It is beyond the scope of our comprehension how a person who is so widely acclaimed in the State of North Dakota as an efficient, good administrator cannot qualify, for some vague reason, for the position.
 To go further with this, we understand that when Central Calssification (sic) came in in (sic) 1974, she was "grandfathered" in, and that for some reason Central Classification feels that it's not possible to add to the credentials by further experience after that time. Let me hasten to say to you, Mr. Espeland, that every month she stayed on the job we have seen her grow, and she has added to the job in maturity and in experience, and really, no matter what your regulations might say, the fact is she has become a better supervisor as time goes on. We believe in systems, too, and through systems we have some sort of order, but I think that you would agree with me that in any system that is set up, there are situations that develop that do not fit into the system.
 We sincerely believe that Mrs. Strecker is an individual who, through her long years of association with this agency, deserves a compassionate hearing from your department, and that she be given her due. We really believe that she qualifies for Administrative Officer III, but if this exerts too much pressure on your department, we would settle for Administrative Officer II.
 In closing, Mr. Espeland, we are talking about an individual who has proven herself and is a valued employee in the State of North Dakota. We don't want this person to lose faith in the system, and we certainly could not afford her leaving the system because of discouragement with it. We have heard many fine things about your operation and know that you have problems in setting up a new department. We must not, however, allow the size of an operation to outweigh the situation of any one individual in the system. We, however, thank you for the time you spent in reviewing this and trust that you will give it your complete attention.
 Thereafter on July 1, 1977, Central Personnel reclassified her to Administrative Officer II. It appears Central Personnel used July 1, 1975, the date she advanced to Administrative Officer I, as the date she completed her four years of supervisory experience as the equivalency for four years of college. On July 1, 1977, she had two additional years of professional experience and was reclassified as an Administrative Officer II. Her salary increased correspondingly to the top of that grade. She remained in that classification until she resigned effective July 31, 1977.
 
 
 [8]
 Defendant also appeals from the clerk of court's disallowance of costs for failure to file a bill of costs within ten days after notice of entry of judgment pursuant to local rule XXIII-A-4. Defendant moves this court to require the district court to consider its motion for retaxation of costs. Notice of entry of judgment was given on December 27, 1979. The bill of costs was not filed until January 10, 1980. We find no abuse of discretion in denying the defendants' bill of costs
 
 
 [9]
 The dissent raises many arguments not briefed or urged by appellant in her brief. It is fundamental that it would be improper to decide this case on grounds not raised in the district court. The main thrust of the dissent is (1) that appellant possessed administrative experience entitling her to a higher classification and (2) that the State Board's classification system was not job related. Appellant raised neither argument in her brief or in the trial below. Plaintiff did not assert at trial or on this appeal that she possessed the education or experience requirements of an Administrative Officer II at any time during her employment prior to July 1, 1977. Additionally, she does not claim that the state-wide classification system was not reasonably related to her job or that the classification creates a discriminatory impact on females over males. In any event, both of these classification evaluations fell within the exclusive jurisdiction of the State and it is difficult to assess how these defendants can be held responsible for something over which they had no control
 
 
 [1]
 Immediately before Mrs. Strecker announced her resignation, her salary was $10,968 annually. Her replacement, David Braaten, was offered and received $18,500 for doing substantially equal work
 
 
 [2]
 In Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), the Supreme Court held that when a plaintiff has made a prima facie showing that an employer's hiring and promotional criteria are discriminatory in effect, the burden shifts to the employer to prove that the requirements bear a "manifest relationship" to the employment in question. Accord, Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1974). The Supreme Court has further described the legal standard to be applied:
 (D)iscriminatory tests are impermissible unless shown, by professionally acceptable methods, to be "predictive of or significantly correlated with important elements of work behavior which comprise or are relevant to the job or jobs for which candidates are being evaluated." 29 CFR § 1607.4(c).
 The employment practice successfully challenged in Griggs was the defendant's requirement that employees have a high school degree and achieve satisfactory scores on two general intelligence tests. Accord, James v. Stockham Valves & Fittings, 669 F.2d 310 (5th Cir. 1977); Pettway v. American Cast Iron Pipe Co., 494 F.2d 211 (5th Cir. 1974). The principle that employment criteria must be "job related" has been reiterated in the context of experience and degree requirements such as those at issue here. Parson v. Kaiser Aluminum & Chemical Corp., 575 F.2d 1374 (5th Cir. 1978); Leisner v. N. Y. Telephone Co., 5 FEP Cases 733 (S.D.N.Y.1973). The Griggs test has also been applied to such employment practices as written promotional exams, Firefighters Institute, Etc. v. City of St. Louis, 549 F.2d 506 (8th Cir. 1977), and height and weight requirements, Dothard v. Rawlinson, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977); Craig v. County of Los Angeles, 626 F.2d 659 (9th Cir. 1980); U. S. v. Lee Way Motor Freight, Inc., 625 F.2d 918 (10th Cir. 1979).
 In this case, as we have pointed out, the plaintiff has established a prima facie case of discrimination. She has shown that she and two other female employees of the Grand Forks County Social Service Board, who held positions substantially similar to hers, were paid less than her replacement. The state could have rebutted this prima facie case by introducing evidence that the wage disparities were justified by experience or education requirements that were in fact demonstrably related to the jobs in question. It is true that Strecker established her prima facie case by showing that she individually was discriminated against, rather than by showing that the state's classification system was discriminatory in effect. However, the principles established by Griggs must still be applicable, or the burden placed on the Equal Pay Act defendants to prove that wage differentials are not sex-based will be meaningless.
 
 
 [3]
 The defendants must establish that the experience and education requirements necessary for an individual to be personally classified as an Administrative Officer II or III are reasonably related to the jobs to be performed in a job classified as Administrative Officer II or III because of the close correlation between the "personal" and "position" classifications. A job may be "underfilled" for a time by someone whose personal classification is one level lower than that of the job. Generally, however, a person's classification matches that of her or his job
 
 
 [4]
 Strecker was appointed as Supervisor of Economic Assistance on April 1, 1972. There is no evidence in the record as to the classification system in effect at that time other than the testimony that persons were classified on the basis of the work they were required to do
 
 
 [5]
 Strecker was classified as an Administrative Officer I on July 1, 1975. On that date, she had been supervisor of Economic Assistance for thirty-nine months; thus, she was given nine months credit for other supervisory services. The record is silent as to whether the credit was given for work at the First Federal Savings and Loan Association or for work as the director of the Food Stamp Program. See notes 6 and 7. No explanation is given as to why only a partial credit was allowed for either of the past experiences. Ohlsen testified that he never knew whether Strecker's experience with the First Federal Savings and Loan Association and with the agency as director of the Food Stamp Program had been counted or not. Strecker was classified as an Administrative Officer II on July 1, 1977, one month before her resignation became effective. Her salary was $1,380 per month, or $16,560 a year $2,000 less than her successor was paid
 
 
 [6]
 Strecker was Chief Teller at First Federal, supervising four to five full-time and additional part-time tellers. She was totally responsible for the bank's savings bonds and traveler's checks as well as other savings and loan teller duties. Prior to her experience as a Chief Teller, she had worked at three other financial institutions as a teller and had had some administrative experience at at least one of them
 
 
 [7]
 Strecker was responsible for establishing and supervising the Food Stamp Program when it was first initiated by the County. Her duties included setting up the files, learning the eligibility requirements established by the federal government and generally handling all problems generated by the new program. She supervised one to two Food Stamp workers
 
 
 [8]
 As supervisor of Economic Assistance, Strecker was in charge of all the County's Economic Assistance Programs: AFDC, Aid to the Disabled, Old Age Assistance, Medicare and General Assistance. She supervised an increasing number of employees and controlled the expenditure of over $2 million in funds. In November, 1975, she assumed the additional responsibility of establishing and supervising a new project initiated by the County: the Child Support Enforcement Program. Three additional personnel were put under her supervision at that time
 
 
 [9]
 Ronald Leingang, personnel officer of the Social Services Board of North Dakota, testified: "It is awfully difficult to know what constitutes an equivalency. It is a question that we ask all the time. The only way we finally know is to have an applicant apply for a job with a certain set of circumstances and run that applicant through the system and finally determine what the decision is on the part of the Central Personnel Division." Leingang's testimony serves to emphasize the fact that the classification system was highly subjective in its application
 
 
 [10]
 See, Hodgson v. Brookhaven General Hospital, 436 F.2d 719 (5th Cir. 1970)
 
 
 [11]
 In 1973, the State requested job descriptions from all personnel performing eligibility functions in the County agencies. As a result, Strecker was reclassified from a Secretary I to an Eligibility Technician III as of April 1, 1973. In 1975, the State adopted a new classification system and initiated a statewide reclassification of all its employees. Strecker was again requested to fill out a job description, and she and her position were upgraded to Administrative Officer I
 
 
 [12]
 Ohlsen testified that he talked with Ronald Leingang "by phone several times" about reclassifying Strecker. He did not, however, submit any written requests to reconsider her classification
 
 
 [13]
 Several women employees of the Board were subpoenaed to testify by Strecker. They testified, in substance, that Ohlsen was a dominating personality, that he ran the agency, that he determined the agenda and that what he said went as far as the Board was concerned. They also testified that Ohlsen was angry at Strecker for filing the lawsuit and took his anger out on some of the female employees
 
 
 [14]
 Fifteen years after the enactment of the Equal Pay Act and Title VII, women were still earning only fifty-eight percent of what men were earning. Taub, Keeping Women in Their Place: Stereotyping Per Se as a Form of Employment Discrimination, 21 Boston College Law Review 345 (1980) (citing Women's Bureau, U. S. Department of Labor, Fully Employed Women Continue to Earn Less Than Fully Employed Men of Either White or Minority Races (1978)). In North Dakota, as recently as 1974, 30.5 percent of male employees earned in excess of $13,200 per year, while only 5.4 percent of the females earned in excess of this amount. U.S. Department of Health and Human Services, Earnings Distributions in the United States 1974 (1980)
 
 
 *
 The Honorable Myron H. Bright, United States Circuit Judge, took no part in the consideration or decision of this case