**Lola KOUBA, a/k/a Lola Hogan, individually and on behalf of all others similarly situated, Plaintiff-Appellee,**

**United States Equal Employment Opportunity Commission, Plaintiff in Intervention-Appellee,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant-Appellant.**

**Nos. 81–4536, 81–4566.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 1982.

Decided Oct. 29, 1982.

Rehearing and Rehearing En Banc Jan. 11, 1983.

---

Kalvin M. Grove, Fox & Grove, Chicago, Ill., for Allstate Ins. Co.

Vella M. Fink, E.E.O.C., Washington, D. C., Judith E. Kurtz, San Francisco, Cal., for EEOC & Kouba.

Before MERRILL, CHOY and HUG, Circuit Judges.

CHOY, Circuit Judge:

This appeal calls into question the scope of the "factor other than sex" exception to the Equal Pay Act of 1963 [1] as incorporated into Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* by the Bennett Amendment.[2] Because the district court misconstrued the exception, we reverse and remand.

## I

Allstate Insurance Co. computes the minimum salary guaranteed to a new sales agent on the basis of ability, education, experience, and prior salary. During an 8-to-13 week training period, the agent re-

---

**1.** The Act, which amends § 6 of the Fair Labor Standards Act of 1938, states:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex:

*Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1).

**2.** The Bennett Amendment, which incorporates into Title VII the affirmative defenses fixed in the Equal Pay Act, states:

It shall not be an unlawful employment practice under this subchapter [Title VII] for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of section 206(d) of title 29 [Equal Pay Act].

42 U.S.C. § 2000e–2(h).

ceives only the minimum. Afterwards, Allstate pays the greater of the minimum and the commissions earned from sales. A result of this practice is that, on the average, female agents make less than their male counterparts.

Lola Kouba, representing a class of all female agents, argued below that the use of prior salary caused the wage differential and thus constitutes unlawful sex discrimination. Allstate responded that prior salary is a "factor other than sex" within the meaning of the statutory exception. The district court entered summary judgment against Allstate, reasoning that (1) because so many employers paid discriminatory salaries in the past, the court would presume that a female agent's prior salary was based on her gender unless Allstate presented evidence to rebut that presumption, and (2) absent such a showing (which Allstate did not attempt to make), prior salary is not a factor other than sex.

II

■ The Equal Pay Act prohibits differential payments between male and female employees doing equal work except when made pursuant to any of three specific compensation systems or "any other factor other than sex." These exceptions are affirmative defenses which the employer must plead and prove. *Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974) (claim brought under the Equal Pay Act).

■ Because Kouba brought her claim under Title VII rather than directly under the Equal Pay Act,[3] Allstate contends that the standard Title VII rules govern the allocation of evidentiary burdens. It cites *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1091, 67 L.Ed.2d 207 (1981), for the proposi-

tion that under Title VII an employee alleging sex discrimination bears the burden of persuasion at all times as to all issues, and concludes that Kouba failed to carry the burden of showing that the wage differential did not result from a factor other than sex.[4]

Allstate misallocates the burden. In *County of Washington v. Gunther,* 452 U.S. 161, 170–71, 101 S.Ct. 2242, 2248–49, 68 L.Ed.2d 751 (1981), the Supreme Court recognized that very different principles govern the standard structure of Title VII litigation, including burdens of proof, and the structure of Title VII litigation implicating the "factor other than sex" exception to an equal-pay claim (though the Court reserved judgment on specifically how to structure an equal-pay claim under Title VII). Accordingly, we have held that even under Title VII, the employer bears the burden of showing that the wage differential resulted from a factor other than sex. *Piva v. Xerox Corp.,* 654 F.2d 591, 598–601 (9th Cir. 1981); *Gunther v. County of Washington,* 623 F.2d 1303, 1319 (9th Cir. 1979) (supplemental opinion denying rehearing), aff'd, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). Nothing in *Burdine* converts this affirmative defense, which the employer must plead and prove under *Corning Glass,* into an element of the cause of action, which the employee must show does not exist.

III

In an effort to carry its burden, Allstate asserts that if its use of prior salary caused the wage differential,[5] prior salary constitutes a factor other than sex. An obstacle to evaluating Allstate's contention is the ambiguous statutory language. The parties proffer a variety of possible interpretations of the term "factor other than sex."

---

**3.** Her apparent reasons for bringing a Title VII action were the uncertainty at that time how the Equal Pay Act affected Title VII and the apparently less-demanding class-consent requirements under Title VII, *Kuhn v. Philadelphia Electric Co.,* 475 F.Supp. 324, 326 (E.D.Pa. 1979).

**4.** Allstate does not dispute that otherwise Kouba established a prima facie case. Thus, for purposes of this appeal, we assume that she has.

**5.** Allstate questions whether its use of prior salary caused the wage differential. We leave that issue for the district court on remand.

## A

We can discard at the outset three interpretations manifestly incompatible with the Equal Pay Act. At one extreme are two that would tolerate all but the most blatant discrimination. Kouba asserts that Allstate wrongly reads "factor other than sex" to mean any factor that either does not refer on its face to an employee's gender or does not result in all women having lower salaries than all men. Since an employer could easily manipulate factors having a close correlation to gender as a guise to pay female employees discriminatorily low salaries, it would contravene the Act to allow their use simply because they also are facially neutral or do not produce complete segregation. Not surprisingly, Allstate denies relying on either reading of the exception.

At the other extreme is an interpretation that would deny employers the opportunity to use clearly acceptable factors. Kouba insists that in order to give the Act its full remedial force, employers cannot use any factor that perpetuates historic sex discrimination. The court below adopted a variation of this interpretation: the employer must demonstrate that it made a reasonable attempt to satisfy itself that the factor causing the wage differential was not the product of sex discrimination. *Kouba v. Allstate Insurance Co.,* 523 F.Supp. 148, 162 (E.D.Cal.1981). But while Congress fashioned the Equal Pay Act to help cure long-standing societal ills, it also intended to exempt factors such as training and experience that may reflect opportunities denied to women in the past. H.R. Rep. No. 309, 88th Cong., 1st Sess. 3, *reprinted in* 1963 U.S. Code Cong. & Ad. News 687, 689. *See, e.g., Strecker v. Grand Forks County Social Service Board,* 640 F.2d 96, 100 (8th Cir. 1981); *Horner v. Mary Institute,* 613 F.2d 706, 714 (8th Cir. 1980); *EEOC v. Aetna Insurance Co.,* 616 F.2d 719, 726 & n. 10 (4th Cir. 1980); *EEOC v. New York Times Broadcasting Service, Inc.,* 542 F.2d 356, 359–60 (6th Cir. 1976). Neither Kouba's interpretation nor the district court's variation can accommodate practices that Congress and the courts have approved.

## B

■ All three interpretations miss the mark in large part because they do not focus on the reason for the employer's use of the factor. The Equal Pay Act concerns business practices. It would be nonsensical to sanction the use of a factor that rests on some consideration unrelated to business. An employer thus cannot use a factor which causes a wage differential between male and female employees absent an acceptable business reason.[6] Conversely, a factor used to effectuate some business policy is not prohibited simply because a wage differential results.

■ Even with a business-related requirement, an employer might assert some business reason as a pretext for a discriminatory objective. This possibility is especially great with a factor like prior salary which can easily be used to capitalize on the unfairly low salaries historically paid to women. *See Futran v. RING Radio Co.,* 501 F.Supp. 734, 739 n. 2 (N.D.Ga.1980) (expressing concern that the use of prior salary would perpetuate the traditionally lower salaries paid women); *Neeley v. MARTA,* 24 F.E.P. Cases 1610, 1611 (N.D. Ga.1980) (same). The ability of courts to protect against such abuse is somewhat limited, however. The Equal Pay Act entrusts employers, not judges, with making the often uncertain decision of how to accomplish business objectives. *See County of Washington v. Gunther,* 452 U.S. at 170–71, 101 S.Ct. at 2248–49. We have found no authority giving guidance on the proper judicial inquiry absent direct evidence of discriminatory intent. A pragmatic standard, which protects against abuse yet accommodates employer discretion, is that the employer must use the factor reasonably in light of the employer's stated purpose as

---

**6.** Not every reason making economic sense is acceptable. *See Corning Glass Works v. Brennan,* 417 U.S. at 205, 94 S.Ct. at 2233. This appeal does not, however, require us to compile a complete list of unacceptable factors or even formulate a standard to distinguish them from acceptable ones. We leave those tasks for another day.

well as its other practices. The specific relevant considerations will of course vary with the situation. In Part IV of this opinion, we outline how the court below should apply this test to the business reasons given by Allstate for its use of prior salary.

C

Relying on recent Supreme Court precedent, Kouba would limit the category of business reasons acceptable under the exception to those that measure the value of an employee's job performance to his or her employer. In *County of Washington v. Gunther,* 452 U.S. at 170–71 n. 11, 101 S.Ct. at 2248–49 n. 11, the Court reported that Congress added the exception "because of a concern that bona fide job evaluation systems used by American businesses would otherwise be disrupted." In *Corning Glass Works v. Brennan,* 417 U.S. at 199, 94 S.Ct. at 2230, the Court explained that these systems "took into consideration four separate factors in determining job value—skill, effort, responsibility and working conditions—and each of these four components was further systematically divided into various subcomponents." Our study of the legislative history of the Equal Pay Act confirms that Congress discussed only factors that reflect job value.

In drafting the Act, however, Congress did not limit the exception to job-evaluation systems. Instead, it excepted "any other factor other than sex" and thus created a "broad general exception." H.R. Rep. No. 309, 88th Cong., 1st Sess. 3, *reprinted in* 1963 U.S. Code Cong. & Ad. News 687, 689. While a concern about job-evaluation systems served as the impetus for creating the exception, Congress did not limit the exception to that concern.

Other language in the Act supports this conclusion. The statutory definition of equal work incorporates the four factors listed in *Corning Glass* as the standard components in job-evaluation systems. (The Act refers to "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.") It would render the "factor other than sex" exception surplusage to limit the exception to the same four factors. And while we might be able to distinguish other factors that also reflect job value, the scope of the exception would be exceedingly narrow if limited to other apparently uncommon factors. The broad language of the exception belies such limitation.

Accordingly, no court or other authority has inferred a job-evaluation requirement. We, too, reject that limitation on the "factor other than sex" exception.

IV

Allstate provides two business reasons for its use of prior salary that the district court must evaluate on remand.[7] We will discuss each explanation in turn without attempting to establish a comprehensive framework for its evaluation. The district court should mold its inquiry to the particular facts that unfold at trial.

A

Allstate asserts that it ties the guaranteed monthly minimum to prior salary as part of a sales-incentive program. If the monthly minimum far exceeds the amount that the agent earned previously, the agent might become complacent and not fulfill his or her selling potential. By limiting the monthly minimum according to prior salary, Allstate hopes to motivate the agent to make sales, earn commissions, and thus improve his or her financial position. Presumably, Allstate cannot set a uniform monthly

---

**7.** A third reason given by Allstate is that an individual with a higher prior salary can demand more in the marketplace. Courts disagree whether market demand can ever justify a wage differential. *Compare, e.g., Horner v. Mary Institute,* 613 F.2d 706, 714 (8th Cir. 1980) (allowing it in limited situations), *with Futran v. RING Radio Co.,* 501 F.Supp. 734, 739

(N.D.Ga.1980) (disallowing it always). We need not rule whether Congress intended to prohibit the use of market demand. Because Allstate did not present any evidence to support its use of prior salary in response to market demand, the district court properly disposed of that reason on summary judgment.

minimum so low that it motivates all sales agents, because then prospective agents with substantially higher prior salaries might not risk taking a job with Allstate.

This reasoning does not explain Allstate's use of prior salary during the initial training period. Because the agents cannot earn commissions at that time, there is no potential reward to motivate them to make sales.

When commissions become available, we wonder whether Allstate adjusts the guaranteed minimum regularly and whether most agents earn commission-based salaries. On remand, the district court should inquire into these and other issues that relate to the reasonableness of the use of prior salary in the incentive program.

### B

Reasoning that salary corresponds roughly to an employee's ability, Allstate also claims that it uses prior salary to predict a new employee's performance as a sales agent. Relevant considerations in evaluating the reasonableness of this practice include (1) whether the employer also uses other available predictors of the new employee's performance, (2) whether the employer attributes less significance to prior salary once the employee has proven himself or herself on the job, and (3) whether the employer relies more heavily on salary when the prior job resembles the job of sales agent.

### V

In conclusion, the Equal Pay Act does not impose a strict prohibition against the use of prior salary. Thus while we share the district court's fear that an employer might manipulate its use of prior salary to underpay female employees, the court must find that the business reasons given by Allstate do not reasonably explain its use of that factor before finding a violation of the Act.

REVERSED and REMANDED.

