**Linda K. CLYMORE, Plaintiff,**

v.

**FAR–MAR–CO., INC., Defendant.**

**No. 80–0677–CV–W–8.**

United States District Court,
W. D. Missouri, W. D.

July 20, 1982.

On Damages and Attorney's Fees
Sept. 13, 1982.

Richard E. Armitage and Thomas P. O'Donnell, Kansas City, Mo., for plaintiff.

Sheryl B. Etling, Richard Monaghan, Stinson, Mag & Fizzell, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION AND JUDGMENT

STEVENS, District Judge.

Plaintiff Linda K. Clymore was employed by defendant Far-Mar-Co., Inc. from August, 1972, to June, 1974, and from March, 1975, to June, 1979. For more than three years prior to her second resignation, plaintiff served as Grain Desk Supervisor. Her First Amended Complaint against her former employer is in two counts. Count I alleges violation of the Equal Pay Act; Count II contains a claim under Title VII for failure to promote. Having heard and reviewed the evidence, the court makes the following findings of fact and conclusions of law pursuant to Rule 52.

### COUNT I: EQUAL PAY ACT

A. Findings of Fact

1. Plaintiff is an adult female citizen of the United States residing in or near Liberty, Missouri.

2. The parties have stipulated the following facts:

a. Defendant is a Kansas corporation licensed to do business in Missouri with offices at 4800 Main Street, Kansas City, Missouri.

b. Defendant is an "enterprise engaged in commerce or in the production of goods for commerce" as defined in 29 U.S.C.A. § 203(s)(1) (West 1978).

c. Defendant had employees subject to 29 U.S.C.A. § 206 (West 1978) in the establishment where plaintiff was employed.

3. Plaintiff's employment history with the defendant including position and compensation is as follows:

a. Hired on August 7, 1972, as Grain Clerk B at $2.02 per hour.

b. Received a raise on November 1, 1972, to $2.16 per hour.

c. Received a raise on August 16, 1973, to $2.31 per hour.

d. Promoted on February 28, 1974, to General Clerk A with a raise to $2.60 per hour.

e. Voluntarily resigned on June 26, 1974.

f. Rehired on March 10, 1975, as Accounting Clerk B at $3.05 per hour.

g. Promoted on December 8, 1975, to General Clerk A with a raise to $3.30 per hour.

h. Received a raise on March 15, 1976, to $3.60 per hour. .

i. Promoted on April 5, 1976, to General Accountant with a raise to $4.00 per hour and assumed the duties and responsibilities of Grain Desk Supervisor.

j. Received a raise on March 14, 1977, to $4.40 per hour.

k. Received a raise on March 20, 1978, to $4.80 per hour.

l. Reclassified as Senior Clerk on March 26, 1979, and received a raise to $5.35 per hour.

m. Voluntarily resigned on June 30, 1979.

4. The duties of Grain Desk Supervisor are specifically set forth in plaintiff's exhibit 11. Essentially, the primary responsibility of the Grain Desk Supervisor is to oversee the movement of grain by rail. From January, 1975, through June, 1979, no more than one person worked as Grain Desk Supervisor, and each held the pay classification of General Accountant.*

5. From 1975 through 1979, the salary range for employees classified as General Accountant was as follows:

a. During 1975, $3.60 to $5.50 per hour.

b. During 1976, $4.32 to $6.60 per hour.

c. During 1977, $4.75 to $7.26 per hour.

d. During 1978, $980.00 to $1,371.00 per month.

e. During 1979, $1,053.00 to $1,475.00 per month.

6. What follows is a list of those persons who served as Grain Desk Supervisor from January, 1975, through June, 1979, their prior experience with defendant, and their wage:

a. Arthur M. Pease; January 6, 1975, to April 30, 1975; one year prior experience; $4.60 per hour.

b. Gregory F. Edelblute; May 1, 1975, to June 30, 1975; eight months prior experience; $4.60 per hour.

c. Gary L. Haer; August 6, 1975, to March 23, 1976; no prior experience; $3.75 per hour; raised to $4.00 per hour on November 17, 1975;

d. Linda K. Clymore; April 5, 1976, to June 30, 1979; three years prior experience; $4.00 per hour; raised to $4.40 per hour on March 14, 1977; raised to $4.80 per hour on March 20, 1978; raised to $5.35 per hour on March 26, 1979.

7. Following the departure of plaintiff, the position of Grain Desk Supervisor was eliminated and the new position of Manager Grain Entry was created; however, the

---

* Three months before plaintiff's resignation and in response to her inquiries concerning the adequacy of her wage, defendant gave plaintiff a raise and reclassified her as a Senior Clerk, a lower pay classification than General Account-

ant. Despite this change, plaintiff's duties and responsibilities as Grain Desk Supervisor remained constant; therefore, this reclassification is irrelevant to the issue of whether plaintiff received equal pay for equal work.

change was not one of substance. The duties of Manager Grain Entry included all those of Grain Desk Supervisor listed in plaintiff's exhibit 11. In addition, the Manager Grain Entry was to implement a new computerized system for the grain desk (known as the "front-end system") which had been in development during plaintiff's tenure as Grain Desk Supervisor.

8. Donald G. Preisser was hired on July 16, 1979, as Manager Grain Entry at a monthly salary of $1,150.00. For the first two months of his employment, he performed duties identical to those of plaintiff. Thereafter, he began to devote about one hour per day to development of the front-end system.

9. Eventually, implementation of the front-end system consumed about half of Preisser's time, a fact reflected in his compensation. On April 1, 1979, approximately nine months after being hired, Preisser's salary went from $1,150 to $1,350 per month. Only at approximately this point did the position of Grain Desk Supervisor actually cease to exist. Thereafter, Preisser no longer performed work substantially similar to that of plaintiff. The front-end system became fully operational on April 1, 1981.

10. The duties and responsibilities of Grain Desk Supervisor ·as performed by plaintiff were identical to those performed by Arthur Pease, Gregory Edelblute, and Gary Haer. Furthermore, the duties of Grain Desk Supervisor as performed by plaintiff were identical to those performed by Donald Preisser during his first two months as Manager Grain Entry and were substantially similar to the duties Preisser performed for approximately seven months thereafter.

11. While performing the duties and responsibilities of Grain Desk Supervisor, plaintiff was paid less than Arthur Pease and Gregory Edelblute. She was paid the same as Gary Haer although she had more experience than he did. During her tenure as Grain Desk Supervisor, plaintiff was consistently paid less than the wage range specified for her pay classification as General Accountant, whereas the males who worked as Grain Desk Supervisor were paid a wage within the range specified for General Accountant.

12. Employees of defendant paid on an hourly basis are compensated at 150% of their normal wage for overtime. Salaried employees are not paid for overtime, nor are they entitled to compensatory time off. Therefore, in comparing the equivalence of compensation between hourly and salaried employees, the entire earnings of an hourly employee including overtime must be considered.

13. During her last twelve months of employment with defendant, plaintiff earned $12,229.92, including overtime pay, which yields an average monthly income of $1,019.16. Thus, defendant paid plaintiff less than it paid Donald Preisser ($1,150.00) for substantially similar work.

14. Defendant was aware of the Fair Labor Standards Act and its requirements at the time of the conduct in question.

**B. Conclusions of Law**

1. This court has jurisdiction· over the parties to and subject matter of this action under 29 U.S.C.A. § 216(b) (West 1965) and 28 U.S.C.A. § 1337 (West 1976).

2. Defendant constitutes an enterprise as defined in 29 U.S.C.A. § 203(r) (West 1978) and an enterprise engaged in commerce or in the production of goods for commerce as defined in 29 U.S.C.A. § 203(s)(1) (West 1978).

3. To establish a prima facie case under the Equal Pay Act, a plaintiff must show an employer has paid "workers of one sex more than workers of the opposite sex for equal work." *Corning· Glass Works v. Brennan,* 417 U.S. 188, 196, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974). "The Equal Pay Act creates a type· of strict liability; no intent to discriminate need be shown." *Strecker v. Grand Forks County Social Service Board,* 640 F.2d 96, 99 n.1 (8th Cir. 1980). "In determining whether work is equal, the court must look to the nature of the duties actually required and performed,

not the official job description or title." *Id.* at 100. *See also Di Salvo v. Chamber of Commerce,* 568 F.2d 593, 596 (8th Cir. 1978).

■ 4. Plaintiff has established a prima facie case. As Grain Desk Supervisor from April 5, 1976, to June 30, 1979, plaintiff performed work requiring skill, effort, and responsibility substantially similar to that performed by her male predecessors. Furthermore, the work performed by plaintiff during the same period required skill, effort, and responsibility substantially similar to the work subsequently performed by Donald Preisser during approximately his first nine months as Manager Grain Entry.

5. Plaintiff performed her duties as Grain Desk Supervisor under working conditions similar to those under which her predecessors labored. Plaintiff's working conditions were also similar to those under which Donald Preisser labored as Manager Grain Entry.

6. Plaintiff was paid less than her male counterparts for equal work. More than a year before plaintiff became Grain Desk Supervisor, defendant paid males sixty cents per hour more than plaintiff initially received. Only after two years as Grain Desk Supervisor did plaintiff's wage finally reach the level of her male predecessors, Arthur Pease and Gregory Edelblute. Defendant makes much of the fact that plaintiff's immediate predecessor, Gary Haer, was paid $4.00 per hour, the rate at which plaintiff started as Grain Desk Supervisor. Defendant explains that it has a policy of starting a new employee at the same wage as that last received by the outgoing incumbent; however, Haer was paid less because he asked for less on his employment application. Consequently, when plaintiff succeeded Haer, she received the lower wage he had received. From this defendant concludes there was no wage discrimination on the basis of sex.

7. The court cannot agree. The significance of Haer's wage vis à vis that of plaintiff must be discounted after considering their respective qualifications. The evidence indicated that experience was an important job qualification for Grain Desk Supervisor. Plaintiff had three years experience; Haer had none. A more apt comparison is between plaintiff and the two males who preceded Haer. Both men had approximately one year of experience, still far less than plaintiff but enough for a rough comparison, and both were paid more than plaintiff for identical work. In urging this court to reject plaintiff's claim on the basis of Haer's wage, defendant argues in essence that an employer may insulate itself from liability so long as it pays a female with considerable experience the same as a male with no experience. This is not the rule. *Hodgson v. American Bank of Commerce,* 447 F.2d 416, 421 (5th Cir. 1971).

8. Plaintiff's evidence on defendant's pay classifications also supports her claim of wage discrimination. The position of Grain Desk Supervisor was unlike any other in defendant's establishment, and those who held the job historically had been classified as General Accountant for purposes of compensation. Defendant now contends this was erroneous since a Grain Desk Supervisor did not perform the work of a General Accountant. On the other hand, the evidence showed that neither did a Grain Desk Supervisor perform the duties specified for any pay classification. General Accountant was apparently selected as a matter of convenience as the most analogous pay classification. This selection remained undisturbed until plaintiff began complaining about her wage—much to defendant's inconvenience. Defendant then reevaluated the position and downgraded it to Senior Clerk.

9. Defendant argues that "[w]ork performed, not formal job classifications, is the issue in an Equal Pay claim," which is a correct statement of law. *Di Salvo,* 568 F.2d at 596. Defendant then proceeds to argue, somewhat inconsistently, that the pay ranges for General Accountant should be disregarded since the position of Grain Desk Supervisor was misclassified and later reclassified. This argument conveniently overlooks the evidence that regardless of the pay classification, all Grain Desk Supervisors performed equal work. Males were compensated within the set pay range;

plaintiff never was, even after several years on the job.

10. Defendant again relies on the pay history of Gary Haer to justify the wages paid plaintiff. Haer began on August 6, 1975, at $3.75 per hour, which was above the $3.60 minimum for General Accountant in 1975. In November of the same year, defendant raised his wage to $4.00 per hour, still within the specified pay range. Haer remained at this wage until his resignation on March 23, 1976. In the meantime, the minimum wage for General Accountant during 1976 had risen to $4.32 per hour. Thus, during his last three months, Haer was not paid within the specified range.

11. Haer's fortuitous departure does not defeat plaintiff's claim. Nowhere in the evidence was there any indication that an employee's compensation was automatically raised on January 1 to bring it within the pay classification for that year. Instead, the evidence showed that employees routinely received raises on their anniversary date and infrequently on other occasions. Haer left before his 1976 anniversary review; therefore, the fact that his wage fell short of the minimum for the final three months of his eight-month tenure does not support the generalization urged by defendant that male Grain Desk Supervisors as well as plaintiff were paid less than the pay range for General Accountant. It is striking that all three of the plaintiff's male predecessors were paid within the specified range during at least some portion of their tenure; the same was never true for plaintiff.

12. Defendant also discounts the significance of the suggested pay ranges since more than one witness testified they were merely advisory and were subject to budgetary constraints. Obviously any wage scale is subject to budgetary constraints, but the court cannot believe that defendant would establish wage scales without first considering the financial outlook for the coming year. Surely defendant would not establish wage guidelines as an idle gesture. If during at least part of her tenure, plaintiff had been compensated at a rate within the General Accountant range, the court might look more favorably on defendant's explanation. On this record, however, plaintiff was never in three years paid within the proper range. Sex discrimination, rather than budgetary constraints, is the more likely explanation for this circumstance.

13. An examination of the facts surrounding Donald Preisser's employment as Manager Grain Entry also reveals inconsistencies in defendant's treatment of males and females. When Preisser was hired to replace plaintiff, defendant did not follow its "policy" of paying a starting salary equal to that last received by the most recent incumbent in the job. Defendant argues that the jobs were not in fact equal, but the evidence was to the contrary. Plaintiff need only show that the jobs were substantially equal, which she has done. *Pearce v. Wichita County, City of Wichita Falls, Texas, Hospital Board*, 590 F.2d 128, 133 (5th Cir. 1979); *Shultz v. American Can Company-Dixie Products*, 424 F.2d 356, 360 (8th Cir. 1970). Although Preisser was hired with the understanding that he would implement the front-end system, he testified that for the first two months he performed the duties listed in plaintiff's exhibit 11—nothing more, nothing less. "[E]quality of work is not determined by duties or responsibilities ... to be assumed in the future." *Strecker*, 640 F.2d at 100. When Preisser did begin work on the new system, these duties initially required only one hour per day. During plaintiff's tenure as Grain Desk Supervisor, she was involved to some degree in developing the front-end system; moreover, witness Burkhardt testified that plaintiff would have been qualified to serve as Manager Grain Entry. Plaintiff and Preisser performed substantially equal work; to conclude otherwise would require the court to exalt form over substance. Although Preisser's job eventually ceased to be substantially similar to that of plaintiff, his first several months on duty provide a period of time sufficient for comparison. *See Strecker*, 640 F.2d at 100.

14. Under the Equal Pay Act, once a prima facie case has been established, 29 U.S.C. § 206(d) provides defendants four affirmative defenses. Defendants have *the burden of proving* the wage disparity is the result of:

> (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

*Strecker,* 640 F.2d at 99 n.1 (emphasis in original). In resisting plaintiff's claim, defendant has not focused on any one of these exceptions. The first three are obviously inapplicable on this record. Since the arguments already raised by defendant and rejected by the court fall within the final exception, it follows that defendant has not met its burden of proving an affirmative defense.

15. Plaintiff is entitled to recover an amount representing the difference between her actual wage and that which she would have received in the absence of impermissible sex discrimination. 29 U.S.C.A. §§ 206(d)(3) & 216(b) (West 1978 & 1965). If an employer wilfully violates the Equal Pay Act, the employee may recover damages incurred during the three years preceding commencement of the action; otherwise the statute of limitations is two years. *Id.* § 255(a). " 'Wilful' is construed to include violations made in good faith if the employer is aware of the application of the Act." *Herman v. Roosevelt Federal Savings & Loan Association,* 432 F.Supp. 843, 851 (E.D.Mo.1977), *aff'd,* 569 F.2d 1033 (8th Cir. 1978). The testimony of Henry Rues made it clear that defendant was aware of the application of the Equal Pay Act. *See also* plaintiff's exhibit 20: *Far-Mar-Co., Inc. Employee Handbook* at 17. Thus, the applicable limitations period is three years. Since plaintiff commenced this action on July 23, 1980, she may recover damages incurred on or after July 23, 1977.

16. The wages of Arthur Pease and Gregory Edelblute will serve as the basis for computation of backpay. In 1975, the maximum wage for General Accountant was $5.50 per hour, and both men earned $4.60, or eighty-four percent of the maximum. When the maximum wage specified for General Accountant in 1977 ($7.26) is multiplied by this percentage, the result is $6.10, or the wage plaintiff should have received from July 23, 1977, to December 31, 1977. Plaintiff's actual wage for that period ($4.40) is subtracted therefrom to arrive at the hourly differential ($1.70) which is then multiplied by the hours worked. Overtime differential can be calculated in the same manner:

$$6.10 \times 150\% = \$9.15$$
$$4.40 \times 150\% = \$6.60$$
$$9.15 - 6.60 = \$2.55 \text{ overtime differential.}$$

Counsel shall file a stipulation in which these hourly differentials are applied to the regular and overtime hours actually worked by plaintiff between July 23, 1977, and December 31, 1977.

17. For 1978 and 1979, the range of compensation for General Accountant was specified in terms of a monthly salary, thus simplifying the calculation of backpay. When the maximum for 1978 ($1,371) is multiplied by eighty-four percent, the result is $1,151.64. Twelve times this figure yields $13,819.68 as the annual salary plaintiff should have received. Deducted from this figure is plaintiff's total actual compensation including overtime for 1978 ($11,624.30). The difference ($2,195.38) represents the amount of compensation wrongfully withheld from plaintiff in 1978.

18. For 1979, the maximum salary for General Accountant was $1,475 per month. Eighty-four percent of this amount is $1,239. When multiplied by the six months plaintiff worked for defendant during 1979, the result is $7,434. Plaintiff actually earned $5,361.72 during 1979, meaning $2,072.28 in unpaid compensation was wrongfully withheld.

■ 19. Generally, an employer who violates 29 U.S.C.A. § 206(d) (West 1978) is liable for liquidated damages in a sum equal to the compensation wrongfully withheld. *Id.* §§ 216(b) & 260. "A liquidated dam-

ages award, however, is not strictly mandatory, and turns on whether defendant has acted in 'good faith.' " *Nitterright v. Claytor,* 454 F.Supp. 130, 140 (D.D.C.1978). *See also Herman,* 569 F.2d at 1035; *Pearce,* 590 F.2d at 134. The employer bears the substantial burden of showing that he acted in good faith with a reasonable belief that his actions did not violate the Act. If the employer meets his burden, the court may in its discretion reduce or eliminate the award of liquidated damages; otherwise, an award remains mandatory. *Nitterright,* 454 F.Supp. at 140–41.

20. Defendant has not made the showing necessary to avoid liability for liquidated damages. The record is at best neutral on defendant's good faith. Without doubt, defendant was aware of the provisions of the Act. When plaintiff complained that she was being paid less than males who performed comparable work, defendant discovered that plaintiff's compensation was in fact less than the range specified for her pay classification. Instead of raising plaintiff's wage to within the specified range, defendant downgraded plaintiff's pay classification. If not an attempt to evade the Act, this maneuver at least indicates indifference to the statutory command of equal pay for equal work. Plaintiff is entitled to an award of liquidated damages equal to the sum of unpaid compensation as calculated above in paragraphs 16, 17, and 18.

21. Finally, an award of a reasonable attorney's fee and court costs to a prevailing plaintiff is mandatory under 29 U.S.C.A. § 216(b) (West 1965). Counsel for plaintiff shall file a verified summary of the hours spent in advancing plaintiff's claim under the Equal Pay Act.

## COUNT II: TITLE VII

A. Findings of Fact

1. The parties have stipulated the following facts:

a. Defendant is an employer within the meaning of 42 U.S.C.A. § 2000e(b) (West 1981).

b. Plaintiff timely filed a complaint with the Equal Employment Opportunity Commission (EEOC).

c. The EEOC had jurisdiction over plaintiff's complaint.

d. Plaintiff received a Notice of Right to Sue from the EEOC.

e. Thereafter, plaintiff timely commenced this action.

f. No issues remain as to jurisdiction, venue or coverage under Title VII of the Civil Rights Act of 1964 as amended by the Equal Employment Opportunity Act of 1972.

2. Males who preceded plaintiff as Grain Desk Supervisor and who remained in the employ of defendant were generally promoted to Merchandiser Trainee and in most instances eventually became full-fledged Merchandisers.

3. Merchandisers conduct the actual trading of grain for defendant and must be able to analyze market conditions quickly and accurately. Merchandiser Trainees understudy the Merchandisers to learn the skills necessary to conduct business successfully.

4. In spring 1978, one of defendant's executives asked plaintiff if she would be interested in becoming a Merchandiser Trainee. Plaintiff responded that she was not interested at that time.

5. In spring 1979, defendant announced that three merchandising positions were open.

6. The three vacancies were for Merchandisers, *not* Merchandiser Trainees. Each position was subsequently filled by an experienced Merchandiser.

7. Although qualified to be a Merchandiser Trainee, plaintiff was not qualified to be a Merchandiser.

8. In spring 1979, when plaintiff expressed her interest in becoming a Merchandiser Trainee, no such position was available nor was there any other opening for a Merchandiser Trainee prior to plaintiff's resignation on June 30, 1979.

B. Conclusions of Law

1. The court has jurisdiction over the parties to and subject matter of this action under 42 U.S.C.A. § 2000e–5 (West 1981) and 28 U.S.C.A. § 1343 (West 1976).

2. Defendant is an employer within the meaning of 42 U.S.C.A. § 2000e(b) (West 1981).

3. In order to establish a prima facie case under Title VII, a plaintiff must show

(i) that he belongs to a racial minority [or other protected class]; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *See also Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

4. Although "[w]hat constitutes a prima facie case of discrimination necessarily varies according to the facts of the case," the *McDonnell-Douglas* test is appropriate when a female plaintiff alleges she was denied a promotion because of her sex. *Meyer v. Missouri State Highway Commission,* 567 F.2d 804, 808 (8th Cir. 1977), *cert. denied,* 435 U.S. 1013, 98 S.Ct. 1888, 56 L.Ed.2d 395 (1978).

5. As one element of her prima facie case, plaintiff must establish "that she applied for *an available position.*" *Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (emphasis added). *Chavez v. Tempe Union High School District # 213,* 565 F.2d 1087, 1092 (9th Cir. 1977). Plaintiff's prima facie case fails on this element because she did not establish that a Merchandiser Trainee position was available during the time she sought a promotion.

6. Plaintiff is not entitled to any relief under Count II and judgment will be entered for defendant.

## CONCLUSION

For the reasons stated, it is

ORDERED that judgment is entered against defendant Far-Mar-Co., Inc. on Count I of plaintiff's First Amended Complaint. Defendant shall pay plaintiff backpay as calculated in paragraphs 16, 17, and 18 and an equal sum as liquidated damages. It is further

ORDERED that judgment is entered against plaintiff, Linda K. Clymore, on Count II of her First Amended Complaint. It is further

ORDERED that within twenty days counsel shall file a stipulation according to the terms of paragraph 16. It is further

ORDERED that within twenty days of the date of this order counsel for plaintiff shall file a verified summary of the time spent and expenses incurred in advancing plaintiff's claim under the Equal Pay Act, including a statement of the terms of their fee arrangement with plaintiff. In addition, counsel for plaintiff shall furnish the court with affidavits from two independent parties regarding the reasonableness of the sum requested as attorney's fees. Counsel for plaintiff may also file any suggestions deemed appropriate. Defendant may respond to these filings within ten days thereafter. The court will then review these filings and issue a final order and judgment specifying the exact amount of plaintiff's damages and a reasonable attorney's fee. It is further

ORDERED that costs of this action be taxed to defendant.

## ON DAMAGES AND ATTORNEY'S FEES

### ORDER

As directed by the Memorandum Opinion filed July 20, 1982, counsel have filed statements concerning plaintiff's backpay for

1977 and attorneys' fees. The parties have stipulated that $1,826.23 is the amount of compensation wrongfully withheld from plaintiff during 1977. When added to the amounts already calculated as being withheld in 1978 and 1979 ($2,195.38 and $2,072.28), the total amount of backpay which plaintiff shall recover is $6,093.89. Added to this is an equal sum as liquidated damages, for a grand total of $12,187.78.

In the opinion of July 20, 1982, the court announced it was prepared to award attorneys' fees and expenses on plaintiff's Equal Pay Act claim. As directed, counsel for plaintiff have filed verified summaries of their time and expenses, as well as two affidavits from independent parties attesting to the reasonableness of the amounts requested. Although counsel for plaintiff spent a total of 498 hours on this case including the unsuccessful Title VII claim, they have requested payment for only 312.-82 hours as that portion they believe to be allocable to the Equal Pay Act claim. At a rate of $50 per hour, the calculations are as follows:

| | | | |
|---|---|---|---|
| Richard Armitage | 224.12 | hours | $11,206 |
| Thomas O'Donnell | 88.7 | hours | $ 4,435 |
| | | Total | $15,641 |

Counsel also request $757.29 as compensation for expenses incurred.

Counsel for defendant has filed suggestions in opposition to the amount of fees requested. After reviewing various factors, defendant suggests that $8,300 (representing one-third of the total time expended multiplied by $50 per hour) plus expenses is reasonable compensation for services rendered on the Equal Pay Act claim.

■ In assessing the reasonableness of the fees requested, it is the obligation of this court to consider the factors enumerated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), and recently summarized in *Walker v. Wegner,* 535 F.Supp. 415, 417 (D.S.D.1982), as follows:

These factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client and (12) awards in similar cases.

*Id.* at 417. *See also Allen v. Amalgamated Transit Union, Local 788,* 554 F.2d 876, 884 (8th Cir.), *cert. denied,* 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977).

Several of the factors listed have little or no bearing on the reasonableness of the fees requested in this case, *e.g.,* preclusion of other employment, imposition of time limitations, undesirability of the case, and professional relationship with the client. What follows is a discussion of those factors which the court does consider relevant to the case at hand.

■ The factors of time and labor required and novelty and difficulty of the case are closely related. Defendant suggests that prosecution of the Equal Pay Act claim required much less effort than the Title VII claim; however, defendant carries this argument much too far when it declares that the "entire case on the Equal Pay Act claim was based on defendant's answer to a single interrogatory." *Suggestions in Opposition to Request for Attorneys' Fees* at 3. If so, defendant should be chided for not settling the case immediately. Instead, defendant raised various arguments concerning the nature of its pay classifications, the type of work performed by various employees, and the differences between hourly and salaried employees. Counsel for plaintiff were required to overcome these arguments for their client to prevail.

A comparison of these efforts to those expended to advance the Title VII claim reveals a rough equivalence. Although plaintiff failed to make a prima facie case,

considerable evidence was presented at trial, which undoubtedly required considerable effort. Under these circumstances, the court believes counsel for plaintiff should be compensated for approximately fifty percent of the 498 total hours expended, rather than sixty-two percent as requested.

A second factor influencing the court is the comparison between the amount recovered and the fee requested. Counsel seek an amount exceeding their client's recovery by more than twenty-five percent. Although such a result could be warranted under certain circumstances, this is not such an unusual case.

Under the terms of the fee agreement between plaintiff and her counsel, they were to receive forty percent of the proceeds of any settlement. If plaintiff did not prevail after a trial on the merits, counsel would only be compensated for the hours spent in trial (at $50 per hour) plus expenses. If plaintiff prevailed on the merits (as is the case), counsel contracted for a reasonable fee to be determined by the court. It is apparent that counsel assumed considerable risk in taking this case. Accordingly, a fee representing a rather high percentage of the amount recovered is reasonable. Even defendant suggests an amount ($8,300) representing almost seventy percent of plaintiff's recovery.

Counsel for plaintiff have requested compensation at the rate of $50 per hour, and defendant concedes this is reasonable. The affiants likewise agree $50 is a reasonable rate for attorneys with the skill and experience of plaintiff's counsel. (It should be noted that counsel for plaintiff as well as for defendant exhibited skills sufficient for effective representation of their respective clients' interests.)

After considering the relevant *Johnson* factors, the court concludes that a reasonable attorneys' fee is $12,000 to be allocated as follows:

| | |
|---|---|
| Richard Armitage (72%) | $8,640 |
| Thomas O'Donnell (28%) | $3,360 |

In addition, defendant shall reimburse plaintiff for expenses of $757.29.

For the reasons stated, it is

ORDERED that in accordance with the opinion of July 20, 1982, judgment is entered in favor of plaintiff and against defendant under the Equal Pay Act in the amount of $12,187.78. It is further

ORDERED that defendant shall pay $12,000 as a reasonable attorney's fee and $757.29 for expenses.