Linda K. **CLYMORE**, Appellee,

v.

**FAR–MAR–CO., INC.,** Appellant.

No. 82–2004.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1983.

Decided June 8, 1983.

As Amended July 29, 1983.

Opinion on Denial of Rehearing July 29, 1983.

Richard E. Armitage, Thomas O'Donnell, Kansas City, Mo., for appellee.

Stinson, Mag & Fizzell, Sheryl B. Etling, Richard Monaghan, Kansas City, Mo., for appellant.

Before BRIGHT and FAGG, Circuit Judges, and REGAN,* Senior District Judge.

FAGG, Circuit Judge.

Far-Mar-Co. appeals from the district court's ruling that it violated the Equal Pay Act by paying discriminatory wages to Linda Clymore. *Clymore v. Far-Mar-Co.*, 549 F.Supp. 438 (W.D.Mo.1982). Far-Mar-Co. challenges the comparison of Clymore to her three male predecessors and also argues that it was inappropriate to compare Clymore to one male successor. Additionally, Far-Mar-Co. urges this court to overturn

* The Honorable John K. Regan, Senior Judge, United States District Court for the Eastern District of Missouri, sitting by designation.

the lower court's award of liquidated damages and attorneys' fees. We affirm the district court's predecessor-employee analysis but agree that the successor comparison was inappropriate. We reverse the award of liquidated damages and remand to the district court for a redetermination of attorneys' fees.

## I. BACKGROUND

Clymore was first employed as a grain clerk with Far-Mar-Co. from August 1972 to June 1974. In March 1975, she was rehired and worked as an accounting clerk until April 1976, when she was promoted to grain desk supervisor. As grain desk supervisor, Clymore was classified as a general accountant on Far-Mar-Co.'s salary range system. However, her wage was always below the general accountant's salary guidelines. Upon her April promotion, she was paid $4.00 per hour. In March 1977, she received a raise to $4.40 per hour and in March 1978 her salary changed to $4.80 per hour. After Clymore complained that she was not being paid within the company's salary range for general accountant, she was reclassified in the lower classification of senior clerk in March 1979 and her wage was raised to $5.35 per hour. Clymore resigned her position of grain desk supervisor in June 1979.

The grain desk supervisor's primary responsibility was to oversee the rail shipment of grain. From January 1975 until Clymore was promoted in April 1976, three males worked as grain desk supervisor. During that time period the job was always held sequentially so that no more than one person worked in the position at one time. The job was classified as general accountant on the salary scale until the lower classification was assigned in March 1979. Arthur Pease, who had one year experience with Far-Mar-Co., was paid $4.60 per hour for his work as grain desk supervisor from January to April 1975. From May to June 1975, Gregory Edelblute, with eight months experience at Far-Mar-Co., received $4.60 per hour while working as the grain desk supervisor. Immediately prior to Clymore,

August 1975 to March 1976, the position was filled by Gary Haer, who had no prior experience at Far-Mar-Co. His starting salary was $3.75 per hour which was increased to $4.00 per hour in November 1975 when his probationary period ended. As already discussed, Clymore started at $4.00 per hour when she became the grain desk supervisor in April 1976, and she was earning $5.35 per hour when she resigned in June 1979. After Clymore resigned, the position of grain desk supervisor was eliminated and the new position of manager grain entry was created. Donald Preisser was hired in July 1979 at a monthly salary of $1,150 to fill the newly-created position. His duties included all of the responsibilities of the abolished grain desk supervisor position but, in addition, he was hired to implement a new computerized front-end system for tracking grain shipments.

Clymore sued Far-Mar-Co. in August 1980 alleging violations of the Equal Pay Act and of Title VII. The district court found in favor of Far-Mar-Co. on the Title VII claim and Clymore has not appealed that decision. After comparing Clymore's wage to her three male predecessors and one male successor, the district court sustained her Equal Pay Act claim. The court awarded her back-pay, liquidated damages, attorneys' fees and expenses. Far-Mar-Co. appealed to this court and has challenged four aspects of the lower court's decision awarding Clymore relief: (1) the court's analysis of Clymore's wage in comparison to the three male predecessor employees; (2) the court's comparison of Clymore to Preisser, a successor employee; (3) the liquidated damages award; and (4) the award of attorneys' fees.

## II. PREDECESSOR EMPLOYEES

### A. Prima Facie Case

After comparing Clymore to her three male predecessors, the district court concluded that she had established a prima facie case in that she was paid less than her male counterparts for equal work. The court stated: "More than a year before [Clymore] became Grain Desk Supervisor,

[Far-Mar-Co.] paid males sixty cents per hour more than [Clymore] initially received. Only after two years as Grain Desk Supervisor did [Clymore's] wage finally reach the level of her male predecessors, Arthur Pease and Gregory Edelblute." 549 F.Supp. at 442. The court recognized that Clymore's immediate predecessor, Gary Haer, was paid the same rate at which Clymore started, $4.00 per hour. One reason Haer was paid less was because he requested less money on his application for employment with Far-Mar-Co. After considering the respective experience of Clymore and Haer, the court determined that Haer's wage had to be discounted. Haer had no experience while Clymore had three years of experience with Far-Mar-Co. and the evidence indicated that experience was an important qualification for grain desk supervisor. The court concluded the more appropriate comparison was between Clymore and the two males preceding Haer, Pease and Edelblute, who both had approximately one year of experience with Far-Mar-Co. *Id.*

Far-Mar-Co. first argues that the lower court erred in finding a prima facie case where Clymore was paid the same as her immediate male predecessor, Haer, because that fact should be the end of any analysis of Clymore's Equal Pay Act claim as a matter of law. According to Far-Mar-Co., courts have allowed claims based on comparisons with an immediate predecessor or successor but have not allowed comparisons with a non-immediate predecessor or successor. *See Strecker v. Grand Forks County Social Service Board,* 640 F.2d 96 (8th Cir.1981); *Pearce v. Wichita County, Wichita Falls, Texas, Hospital Board,* 590 F.2d 128 (5th Cir.1979); *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041 (5th Cir.), *cert. denied,* 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973). In our view, the cases in this area do not support the narrow rule advanced by Far-Mar-Co. Courts have not held that Equal Pay Act comparisons must stop with an immediate predecessor or successor as a matter of law. Rather, in the factual context of most cases, non-immedi-

ate comparison was unnecessary or factually impossible.

Although Far-Mar-Co. relies heavily on *Behrens Drug Co.,* that court utilized both non-immediate and immediate comparisons where factually appropriate. In *Behrens,* female workers were paid a discriminatorily low wage in four separate job categories. Concerning data processing department supervisors, the facts supported a comparison between one male supervisor and the female who replaced him. The court stated that "the Equal Pay Act applies to jobs held in immediate succession, as well as simultaneously." *Hodgson v. Behrens Drug Co., supra,* 475 F.2d at 1049. However, the sequential holding of the jobs was not the disputed issue and there was no suggestion that any type of non-immediate comparison was factually possible. Rather, whether the male's wage was justified by the performance of extra work and whether the statute of limitations barred the claim were the crucial issues concerning that employee category. *Id.* at 1048–51. In context, the court's statement of "immediate" succession does not stand as a limitation requiring only immediate-succession comparisons while rejecting, as a matter of law, non-immediate comparisons.

In its discussion of the separate job category of city order desk employees, the court rejected Behrens' contention that the lower pay given females in that job was justified by its sales training program. The facts supported non-immediate comparisons for one of the female employees, Patricia Kolb. She worked from November 30, 1970, to December 31, 1970. Two male employees, Carney and Connor, ended their jobs at the city order desk in March 1968 and one male employee, Ball, started in February 1970 and ended in July 1970. The fourth male employee, Bailey, started on December 7, 1970, and ended on June 1, 1971. *Id.* at 1048 n. 10. The court did not indicate that Kolb could only be compared to Ball, the most immediate male predecessor, or Bailey, who worked concurrently with Kolb for approximately one month. Instead, Kolb was one of three females ruled to have engaged in work equal to the work of the

four males but at a substantially lower rate than Behrens paid the male employees. *Id.* at 1044. *Behrens* does not support Far-Mar-Co.'s contention that the Equal Pay Act limits a comparison of Clymore's wages to only her immediate male predecessor as a matter of law. *Behrens* suggests that an Equal Pay Act violation must be determined in light of all appropriate facts, including, when factually supportable, non-immediate predecessor comparisons.

Additionally, the Seventh Circuit, in an analogous case, utilized non-immediate comparisons in the context of successor employees. *See Taylor v. Philips Industries, Inc.,* 593 F.2d 783 (7th Cir.1979). Although the *Taylor* plaintiff's claim was based on Title VII, *Taylor* is analogous to this case because Title VII provisions on discriminatorily low wages based on sex are construed *in pari materia* with the provisions of the Equal Pay Act. *See* 42 U.S.C. § 2000e–2(a), (h); *Orr v. Frank R. MacNeill & Son, Inc.,* 511 F.2d 166, 170–71 (5th Cir.), *cert. denied,* 423 U.S. 865, 96 S.Ct. 125, 46 L.Ed.2d 94 (1975); *Ammons v. Zia Co.,* 448 F.2d 117, 119 (10th Cir.1971). Taylor was a warehouse foreman who was paid "considerably less than the amounts paid to her *successors* at that position, *all* of whom have been male." *Taylor v. Philips Industries, Inc., supra,* 593 F.2d at 786 (emphasis added). This case supports our rejection of Far-Mar-Co.'s artificial limitation of a court's analysis to only immediate predecessor or successor employees. If the factual circumstances of a case indicate, as here, that non-immediate comparisons are appropriate, neither the statute nor the cases prohibit, as a matter of law, such comparisons in analyzing equal pay violations.

### B. Experience

■ Far-Mar-Co.'s second argument is that the court erred as a matter of law in relying on the employee's experience with the company to justify comparing Clymore to Pease and Edelblute rather than to Haer. Far-Mar-Co. contends that the lower court engaged in a wholesale re-evaluation of its pay scale in requiring it to pay Clymore on

the basis of her experience. Clymore had three years of experience, Pease had one year, Edelblute had eight months, and Haer had no prior experience. The district court concluded:

In urging this court to reject [Clymore's] claim on the basis of Haer's wage [Far-Mar-Co.] argues in essence that an employer may insulate itself from liability so long as it pays a female with considerable experience the same as a male with no experience. This is not the rule. *Hodgson v. American Bank of Commerce,* 447 F.2d 416, 421 (5th Cir.1971).

549 F.Supp. at 442.

The trial court did not hold that Far-Mar-Co. was required to pay Clymore on the basis of her experience instead of her job duties. It is undisputed that Clymore performed the same duties as all of her predecessors. After making the equal work determination, the court utilized experience as a factor in determining whether Clymore had received equal pay for her equal work. The evidence "when taken in light of all of the circumstances, *including the experience factor,* clearly indicate[s] a difference in the manner in which the men [and Clymore] were being paid during this period." *See Hodgson v. American Bank of Commerce, supra,* 447 F.2d at 421 (emphasis added). Far-Mar-Co. cannot escape liability by paying Clymore, who had three years of experience, the same wage as Haer, who had no experience. We agree with the district court that Clymore's experience was a factor sufficient to overcome Far-Mar-Co.'s consistent argument that the comparison must stop with Haer. The lower court did not err in analyzing all the circumstances in its determination of what constituted an appropriate comparison.

### C. Wage Classifications

■ The district court determined that Clymore's evidence that she was not paid according to Far-Mar-Co.'s pay classifications also supported her claim of unequal pay. The grain desk supervisor position was a unique job in the company and had been classified as general accountant on the

salary range system until Clymore complained about her wage causing Far-Mar-Co. to downgrade the pay classification to senior clerk. 549 F.Supp. at 442.

Far-Mar-Co. argues that the court's reliance on the fact that Clymore was paid less than the salary range for general accountant has "two critical fallacies." First, the company urges that work performed not formal job classification is the issue in an equal pay case and the company's evidence established that the grain desk supervisor did not perform the duties performed by general accountants. The general principle concerning job classifications cited by the company is irrelevant to the trial court's discussion of pay classifications. The court noted the uniqueness of the grain desk supervisor job and concluded that the company had selected general accountant as a matter of convenience as the most analogous pay classification. The district court did not err in concluding that Far-Mar-Co.'s "argument conveniently overlooks the evidence that regardless of the pay classification, all Grain Desk Supervisors performed equal work. Males were compensated within the set pay range; [Clymore] never was, even after several years on the job." *Id.* at 442–43.

Far-Mar-Co.'s second argument is likewise without merit. It argues that the fact that Clymore was always paid less than the range for general accountant is not evidence of sex-based discrimination because Haer was paid less than the general accountant pay range at the time he resigned. Haer's wage was short of the minimum pay for general accountant for the last three months of his eight-month tenure. This status occurred in January 1976 when general pay schedules for 1976 were established by the company. The record does not indicate that employees automatically received raises in January to bring salaries within the newest pay classifications. Rather, employees routinely received raises on the anniversary of hiring and infrequently at other times. Since Haer left before his 1976 anniversary review, his three months below the new classification do not support Far-Mar-Co.'s argument. *See EEOC v. Liggett*

*& Myers, Inc.,* 690 F.2d 1072, 1077–78 (4th Cir.1982). We agree with the district court that "[i]t is striking that all three of [Clymore's] male predecessors were paid within the specified range during at least some portion of their tenure; the same was never true for [Clymore]." 549 F.Supp. at 443.

### III.  SUCCESSOR EMPLOYEE

■ Unlike the comparison to the predecessor employees where it was clear that Clymore performed equal work, the issue regarding the comparison to the successor employee is whether Preisser and Clymore performed equal work. The district court concluded that Clymore had proven that the jobs were substantially equal. The court based its conclusion on the facts that although Preisser was hired in the new position of manager grain entry to implement the front-end system, he performed the same duties as Clymore during his first two months on the job. After that time, Preisser's duties on the new front-end system required one hour per day for approximately seven months. The court noted that Clymore was involved to some degree in developing the front-end system before she left her position of grain desk supervisor. On April 1, 1979, after Preisser's first nine months, implementation of the new system occupied about one-half of his time and the court concluded that only at that point did the position of grain desk supervisor actually cease to exist. 549 F.Supp. at 441. The front-end system became fully operational one year later, on April 1, 1981.

The district court erred in ruling that the jobs performed by Clymore and Preisser were substantially equal. Superficial identity of duties does not automatically establish equal work. *Horner v. Mary Institute,* 613 F.2d 706, 714 (8th Cir.1980). Preisser's performance of the duties of the grain desk supervisor for his first two months was necessary for and incidental to his primary job duty of developing and implementing the new front-end system. The lower court did not give enough weight to the fact that Preisser had to become familiar with the current operation of tracking grain ship-

ments before he could implement the new system. Preisser's primary duty during his first two months was to learn and understand the manual system so that he could replace it. As explained by Robert Burkhardt, Far-Mar-Co.'s division controller, "[Preisser] had to have a time period in there to learn the system, learn our way of handling the grain documents. If he was going to implement and design the front-end system and applications for that area, he needed to know the basics of the area before he started."

During the next seven months of Preisser's employment, he performed additional tasks that consumed a significant amount of his time. *See Marshall v. Building Maintenance Corp.*, 587 F.2d 567, 570 (2d Cir. 1978). He spent approximately one hour a day or approximately twelve percent of his time on developing and implementing the new computer system. *See id.* at 571 (ten percent is a significant portion). Additionally, he implemented a time-saving multi-car invoice system. Far-Mar-Co. had tried the multi-car invoice system before, but because of problems with it, the company had abolished it. After Preisser reviewed the company's operation, he determined it could work and implemented it. Although the record indicates that Clymore had been involved in some discussions concerning the front-end system and had taken some basic training on the CRT, the evidence does not indicate what amount of her time those activities involved. In any event, it is clear that it was not Clymore's job to assume the full responsibility for designing and implementing the new front-end system. Therefore, the work performed by Clymore and Preisser was not substantially equal and the district court erred in so holding.

Because the court utilized the wages of Pease and Edelblute in computing the back-pay due Clymore, our ruling that Preisser and Clymore did not perform equal work does not affect the court's back-pay calculation. *See* 549 F.Supp. at 444. As determined by the district court, Clymore is entitled to recover $6,093.89 in back-pay. *Id.* at 446–47.

## IV. LIQUIDATED DAMAGES

Far-Mar-Co. challenges the lower court's award of liquidated damages equal to the sum of unpaid compensation. The district court has discretion to award liquidated damages; however, the court abused its discretion in awarding liquidated dam-

ages against Far-Mar-Co. Liquidated damages are not appropriate where, as here, Far-Mar-Co. has shown that its actions were in good faith and it had reasonable grounds for believing that its actions were not a violation. *See* 29 U.S.C. § 260; *Herman v. Roosevelt Federal Savings & Loan Assoc.*, 569 F.2d 1033, 1035 (8th Cir.1978). Because Far-Mar-Co. paid Clymore the same wage as Haer, her immediate predecessor, it acted in good faith and had reasonable grounds for believing it was not violating the act. Although Far-Mar-Co.'s beliefs proved eventually to be inaccurate, reasonable grounds existed for its beliefs. We reverse the district court's award of liquidated damages.

## V. ATTORNEYS' FEES

The district court awarded Clymore attorneys' fees of $12,000 plus expenses. Far-Mar-Co. had suggested that $8,300 plus expenses was reasonable compensation for services rendered. The "results obtained" is one factor in calculating the appropriate fee. *See Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974). Because our ruling has changed the results obtained by eliminating the award of liquidated damages and by eliminating the comparison to Priesser as a basis for Far-Mar-Co.'s liability, we remand to the district court for an appropriate recalculation of attorneys' fees.

## VI. CONCLUSION

The lower court is affirmed in part and reversed in part. Clymore is entitled to $6,093.89 in back-pay but she is not entitled to liquidated damages. We remand to the lower court for a redetermination of the appropriate attorneys' fee and for entry of an order consistent with this opinion.

## ORDER

The appellee's petition for rehearing by the panel is denied.

The appellee's motion to remand the motions of appellee's attorneys for fees and expenses on appeal to the district court for determination is granted.

Interest on the appellee's award of damages and for attorney fees and expenses in the district court should run from the date of original judgment until payment. Inter-

est on the award of attorney fees and expenses on appeal, if any, should run from the date of the district court's supplemental judgment until payment. The interest rate should be determined under 28 U.S.C.A. § 1961 (Supp.1983).