# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 99-1529

_____

Carol Broadus,                                    *
                                                  *
    Appellee,                    *
                                                  *    Appeal from the United States
    v.                           *    District Court for the
                                                  *    Western District of Arkansas.
O.K. Industries, Inc.,                            *
                                                  *
    Appellant.                   *

_____

Submitted: March 16, 2000
   Filed: September 12, 2000

_____

Before HANSEN and FAGG, Circuit Judges, and NANGLE,[1] District Judge.

_____

HANSEN, Circuit Judge.

O.K. Industries, Inc., appeals the district court's[2] judgment entered in favor of Carol Broadus after a jury trial. We affirm.

_____

[1]The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

[2]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

I.

Carol Broadus was hired into the data processing department of O.K. Industries in 1987. She received several promotions over the years and was eventually promoted to the newly created position of Operations Coordinator in July 1991. With this promotion, she received a raise from $8.00 per hour to $9.00 per hour. She held this position until September 13, 1996, the date on which she terminated her employment. At that time, she was making $10.60 per hour (approximately $22,172 per year).

In her capacity as Operations Coordinator, Broadus's testimony explains that she was the first person called when a computer user was having a problem; she was available on-call 24 hours a day; she would attempt to fix the computer problem over the phone or go to the site to fix the problem; if she could not fix the problem, she would refer the call to someone else. Her supervisor, Robert Cloninger, testified that she was unable to fix only about five to ten percent of the computer problems that arose, "if that much." (Trial Tr. at 290.) Broadus also testified that she set-up computers and got them running; installed equipment and software; trained users on the computers and software; ran network back-ups; performed maintenance, including printer maintenance (changing toner cartridges and light printer cleaning); occasionally ran computer cables; conducted software training; built computers from scratch; installed wall jacks for computer cabling; installed printers; ordered equipment; swapped out broken computer parts; and trained accountants to operate the new fixed assets system. (Id. at 53-63.) In addition, she was the VAX security administrator and the Windows N/T server administrator. (Id. at 61.)

Cloninger testified that he asked his supervisor, Jim Hurt, on numerous occasions, to put Broadus on salary and that Hurt either ignored him or simply said no. (Id. at 300.) Cloninger also testified that all the men in the department were on salary and all the women in the department were paid hourly in 1995-1996. (Id. at 302.) Cloninger stated that he was directed by Hurt to hire men for technical positions and

2

women for clerical positions. (Id. at 285.) Cloninger testified that in July 1996 Hurt instructed him to take away some of Broadus's duties and give them to Hoa Aunguyen because "ambitious young men [need] to be promoted." (Id. at 302.) Shortly after that, Cloninger was fired. Broadus left O.K. Industries in September 1996. Thereafter, her position was eliminated.

Gary Bunzel was hired as Cloninger's replacement in October 1996. Bunzel proposed that O.K. Industries discontinue out-sourcing printer maintenance and technical support to Compunet, a third-party service provider. Bunzel testified, however, that even after October 1997 work was still being out-sourced to Compunet under a contract that had been entered into prior to Bunzel's hiring at O.K. Industries. (Id. at 197.) As part of his plan to develop an in-house help desk, Bunzel hired Aaron Vorabooth in February 1997 and Ken McPhail in March 1997 as help desk technicians. Two additional technicians were hired later in 1997.

In April 1996, Marcus Mulson was hired at a rate of $9.00 per hour to help Broadus. According to Mulson's testimony, Broadus interviewed him, trained him, and supervised him. His primary duties were cleaning printers and other miscellaneous tasks, such as answering user calls, delivering computers, and configuring and repairing computers. Compunet trained Mulson to do printer cleaning. Broadus remained Mulson's supervisor until Aunguyen began to take over her duties. In March 1997, Mulson was put on salary at $22,000 per year. In May 1997, Mulson became the supervisor of Vorabooth and McPhail. He received a raise to $27,000 and then another raise that year to $27,810. Mulson testified that his job duties "more or less" remained the same. (Id. at 132.)

Vorabooth was hired in February 1997 as a help desk technician and placed on salary at $26,000 per year. Vorabooth testified that his duties initially consisted of cleaning printers, answering phones, and stocking and inventorying hardware. (Id. at

3

262.) After Bang Nguyen was hired in September 1997 to clean printers, Vorabooth testified that he started setting up computers and installing software. (Id. at 263.)

McPhail was hired as a help desk technician in March 1997 and placed on salary at $25,000 per year. He testified that his duties consisted of cleaning and maintaining printers, answering calls from users, installing and repairing computers, and troubleshooting. (Id. at 245.) McPhail also testified that he built computers from scratch and ran cable. When McPhail became the help desk supervisor after Mulson left in March 1998, McPhail was making about $37,000 per year.

Nguyen was hired as a help desk technician in September 1997 at a salary of $20,000 per year. Nguyen testified that his primary duty was to clean printers, but he also answered user calls, repaired computers, and ran cable. In October 1998, Nguyen was given a raise to $25,000 per year. (Id. at 277.)

Broadus filed a complaint against O.K. Industries alleging discrimination on the basis of gender in violation of the Equal Pay Act (EPA), 29 U.S.C. § 206 (1994), and the Arkansas Civil Rights Act (ACRA), Ark. Code Ann. §§ 16-123-101 through 108 (Michie Supp. 1997). In the first trial, Broadus alleged that she was paid less than Aunguyen and Mulson for performing substantially equal work. The jury found in favor of Broadus and awarded her a total of $22,500 in back pay, liquidated damages, and punitive damages. O.K. Industries filed a motion for judgment as a matter of law or a motion for a new trial. The district court granted the motion for a new trial because the back pay award was excessive. In addition, the district court concluded that Aunguyen was not a valid comparator because he had more skills and responsibilities than Broadus had in the position.

In the second trial, Broadus alleged that she was paid less than Mulson, Vorabooth, McPhail, and Nguyen for performing substantially equal work in violation of the EPA and the ACRA. The jury again found in favor of Broadus and awarded

4

$3,452 in back wages for the period of June 16, 1994, through June 16, 1995, under the EPA, $3,452 in back wages for the period of June 16, 1995, through September 13, 1996, under both the EPA and the ACRA, and $15,000 in punitive damages under the ACRA. Liquidated damages were awarded, pursuant to 29 U.S.C. § 216(b), in an amount double the amount of the back wages, $6,904. The judge remitted to $0 the $3,452 back wages award under the ACRA in order to avoid duplicative relief. The final award entered against O.K. Industries totaled $28,808. O.K. Industries appeals, raising several questions of law.

## II.

To establish a violation of the Equal Pay Act, an employee must demonstrate that the employer paid male and female employees different wage rates for substantially equal work. See EEOC v. Universal Underwriters Ins. Co., 653 F.2d 1243, 1244 n.3 (8th Cir. 1981). O.K. Industries sought dismissal of this claim as a matter of law, but the district court denied the motion. A case is properly dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. " Breedlove v. Earthgrains Baking Cos., 140 F.3d 797, 799 (8th Cir.) (quoting McCormack v. Citibank, NA, 979 F.2d 643, 646 (8th Cir. 1992)), cert. denied, 525 U.S. 921 (1998). We review the denial of a motion to dismiss de novo. See id.

O.K. Industries first argues that the district court erred in denying its motion to dismiss because, as a matter of law, Broadus could not compare her compensation to that of her non-immediate male successors. O.K. Industries contends that this issue should not have gone to the jury because Mulson, in particular, did not make more than Broadus until a year after Broadus quit. Additionally, O.K. Industries asserts that the factual circumstances of this case do not warrant non-immediate successor comparisons because the jobs duties of Broadus and those of the male successors were not substantially similar as a result of the restructuring of the data processing department.

5

We note initially that we "have not held that Equal Pay Act comparisons must stop with an immediate predecessor or successor as a matter of law. " Clymore v. Far-Mar-Co., 709 F.2d 499, 502 (8th Cir. 1983). To the contrary, we have held that "[i]f the factual circumstances of a case indicate . . . that non-immediate comparisons are appropriate, neither the statute nor the cases prohibit, as a matter of law, such comparisons in analyzing equal pay violations." Id. at 503. "[A]n Equal Pay Act violation must be determined in light of all appropriate facts, including, when factually supportable, non-immediate predecessor comparisons." Id.

In the circumstances of this case, the use of non-immediate successor comparators was appropriate. Broadus was the only person employed at O.K. Industries in the position of Operations Coordinator. She had no immediate predecessor or contemporaneous comparator who engaged in substantially equal work. In terms of her immediate successor comparator, Aunguyen, the district court concluded that he was not an appropriate comparator because he had additional responsibilities in his position, but the district court did not come to the same conclusion regarding Mulson. Prior to the department restructuring and the hiring of new technicians, no one performed substantially equal work to Broadus. Consequently, there was no adequate comparator until then. In May 1997, Mulson became the supervisor of Vorabooth and McPhail, and at that time Mulson became an adequate comparator to Broadus. Broadus also presented evidence that Vorabooth and McPhail, both hired in early 1997 at a higher salary than Broadus ever achieved, engaged in substantially similar work to Broadus. As illustrated in Clymore, the law of this circuit allows the use of non-immediate successor comparators in the appropriate circumstances. Id. In Broadus's case, the use of non-immediate successors was not only appropriate but necessary.

O.K. Industries argues that the elimination of the Operations Coordinator position and the decision to move all printer maintenance and computer repair in-house,

rather than out-sourcing to Compunet, shows that the work was not substantially equal because Broadus did not do the heavy printer cleaning and the computer repairs that the help desk technicians did after the restructuring. While it is true that all computer repairs, including the more time-consuming complicated repairs, were done in-house after the restructuring, it is also true that four additional people were hired to do that work. The record indicates that Broadus did many other tasks that were not done by the help desk technicians and that she was too "swamped," according to her supervisor Cloninger, to get to everything. (Trial Tr. at 292.) In addition, although the contract with Compunet to provide printer maintenance and cleaning was terminated and that task was eventually completed by the help desk technicians, the testimony showed that the printer cleaning and maintenance were low-level tasks that were performed by the newest help desk technicians who were trained on the job to do it. The testimony also showed that Broadus supervised Mulson, who performed printer cleaning. For purposes of the Equal Pay Act, the fact finder must consider the overall job, not just the individual segments of the job, when determining whether two employees performed substantially equal work. See EEOC, 653 F.2d at 1248. It was proper for this issue to be submitted to the jury because Broadus presented evidence sufficient to support her claim for relief. See Breedlove, 140 F.3d at 799.

O.K. Industries also sought dismissal of the ACRA claim, but the district court denied the motion. O.K. Industries asserts that the district court erred in allowing Broadus to submit a claim of discriminatory compensation under the ACRA because that act does not expressly authorize such an action. O.K. Industries refers to the language of the ACRA which states that it applies to actions directed at the right to "obtain and hold employment." O.K. Industries explains that this means the ACRA applies only "to get[ting] a job and [being] free from discriminatory discharge." (Appellant's Br. at 22.)

We respectfully disagree with O.K. Industries' interpretation of the ACRA. The ACRA states, "The right of an otherwise qualified person to be free from discrimination

7

because of . . . gender . . .is recognized and declared to be a civil right. This right shall include, but not be limited to: (1) The right to obtain and hold employment without discrimination . . . ." Ark. Code Ann. § 16-123-107(a). Certainly the right to hold employment without discrimination on the basis of gender encompasses the right to be paid for that employment without discrimination on the basis of gender. In addition, we note that the language of the ACRA is subject to a wider interpretation because the ACRA specifically states that the rights listed are not the only rights that are protected. See id. (stating the right to be free from discrimination "shall include, but not be limited to" the enumerated rights).

O.K. Industries also argues that Broadus's cause of action did not accrue until more than one year after she terminated her employment at O.K. Industries, and therefore, the cause of action was barred by the ACRA's one-year statute of limitations. O.K. Industries explains that Broadus was not discriminated against until Mulson's salary exceeded Broadus's wages, which occurred more than one year after she stopped working there.

O.K. Industries' contention lacks merit. Broadus's cause of action accrued while she was employed at O.K. Industries, and she filed her complaint nine months after her September 1996 termination. Although the record does not indicate on what date in 1997 Mulson received a raise to $27,000, we do know that it was sometime after May 1997 when he became the supervisor of Vorabooth and McPhail. At that time, Vorabooth and McPhail were making $26,000 and $25,000 per year, respectively. In its brief, O.K. Industries ignores the fact that Broadus's hourly wage was also compared to the salaries of Vorabooth and McPhail.

Next, O.K. Industries challenges as duplicative the award of liquidated damages under the EPA and the award of punitive damages under the ACRA. O.K. Industries accuses Broadus of making a "dessert cart" of the verdict and "choosing dainties from each cause of action." (Appellant's Br. at 27).

8

We agree with the district court that the award in this case represents different elements of damage and, therefore, is not duplicative. The back wages and liquidated damages are compensatory in nature and the punitive damages are penal. See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945); Reich v. Southern New England Telecomms., 121 F.3d 58, 71 (2d Cir. 1997). Liquidated damages under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (1994), "constitute[] compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." Brooklyn Sav. Bank, 324 U.S. at 707. The term "liquidated damages" in the Fair Labor Standards Act is "something of a misnomer" because it is not a sum certain amount determined in advance, rather it is "a means of compensating employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due." Reich, 121 F.3d at 70 n.4 (internal quotations and citations omitted). We conclude that Broadus was entitled both to compensatory damages (including "liquidated" damages) under the EPA and punitive damages under the ACRA because the awards were not duplicative. Compare Denesha v. Farmers Ins. Exch., 161 F.3d 491 (8th Cir. 1998) (upholding a jury award of compensatory and liquidated damages under the Age Discrimination in Employment Act and punitive damages under the Missouri Human Rights Act), cert. denied, 119 S. Ct. 1763 (1999).

Finally, O.K. Industries contends that the district court erred in instructing the jury that it could award Broadus back pay during the period prior to June 28, 1996 (the date on which Aunguyen began taking on some of Broadus's responsibilities), because no male comparator was working alongside her prior to that date. On this point, O.K. Industries is simply wrong. As discussed previously, the law allows the use of successor comparators for EPA violations. See Clymore, 709 F.2d at 503.

O.K. Industries also argues, in the same section of its brief, the unrelated point that the district court erred in awarding liquidated damages because O.K. Industries acted in good faith and that its behavior was not willful. O.K. Industries cites Clymore

for the proposition that liquidated damages are not proper where an employer has paid an immediate predecessor the same wage as a plaintiff. Consequently, O.K. Industries asserts that it should not have been assessed liquidated damages because it could not have anticipated that it would pay male successors more than Broadus after restructuring the data processing department.

In Clymore, the court concluded that the employer had "shown that its actions were in good faith" and that "it had reasonable grounds for believing that its actions were not a violation," in accordance with 29 U.S.C. § 260. Clymore, 709 F.2d at 505. The burden is on the employer to show that the violation of the EPA was in good faith. See Braswell v. City of El Dorado, Ark., 187 F.3d 954, 957 (8th Cir. 1999). O.K. Industries confuses the jury's finding of willfulness under 29 U.S.C. § 255(a), which extended the applicable statute of limitations from two years to three years, and the district judge's discretionary decision to award liquidated damages, pursuant to 29 U.S.C. § 260, in the absence of a showing of good faith. The jury's decision on willfulness is distinct from the district judge's decision to award liquidated damages. See Fowler v. Land Management Groupe, Inc., 978 F.2d 158, 162 (4th Cir. 1992). Our review of the record does not show that O.K. Industries met its burden on the issue of good faith, and O.K. Industries does not provide us with any citations to the record where it presented evidence of good faith and reasonable belief to the district court. Therefore, we conclude that the district court did not abuse its discretion in awarding liquidated damages.

III.

For the foregoing reasons, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.